173 P.3d 479

STEVEN H. and Tammy H., Appellants,

v.

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Matthew H., Savannah H., Appellees.

No. 1 CA–JV 07–0076.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 3, 2008.

Review Granted April 22, 2008.

**316**

Jeffrey A. James, Flagstaff, Attorney for Appellant.

David Goldberg, Flagstaff, Attorney for Appellee.

## OPINION

TIMMER, Judge.

¶ 1 Steven H. and Tammy H. (collectively "Parents") appeal the juvenile court's ruling that two of their children, Matthew H. and Savannah H. (collectively "Children"), who are Indians and therefore subject to the Indian Child Welfare Act ("ICWA"), 25 U.S.C. §§ 1901–1963 (2000), are dependent as to Parents pursuant to Arizona Revised Statutes ("A.R.S.") section 8–201(13)(a) (2007). Among other things, Parents argue the court erred because a qualified expert did not opine that Parents' continued custody of Children would likely result in serious emotional or physical damage to either child. For the following reasons, we agree and therefore reverse and remand for additional proceedings.

## BACKGROUND[1]

¶ 2 Seventeen-year-old Matthew and fifteen-year-old Savannah are the biological children of Tammy H. and the adopted chil-

dren of Steven H. Children are the oldest of eight siblings. Unfortunately, Children have experienced troubles during their young lives, and Child Protective Services has interacted with the family for years over issues of Parents' physical discipline. Moreover, in recent years, the juvenile court has declared Children delinquent for their commission of various offenses.

¶ 3 In July 2006, the guardian ad litem ("GAL") for Children filed a petition asking the juvenile court to find Savannah dependent as to Parents. The GAL alleged Savannah was dependent pursuant to A.R.S. § 8 201(13)(a)(i) because she was in need of proper and effective parental care and control and Parents were not willing and capable of exercising such care and control. One month later, the GAL filed a supplemental dependency petition asking the court to declare Matthew dependent for the same reasons. At the time of the dependency petitions and eventual disposition, Children were in out-of-home placements due to their delinquent acts.

¶ 4 The juvenile court conducted a multiple-day hearing in late 2006 and early 2007. Somewhat unusually, the GAL was the only party in the proceedings who advocated for the dependency petition. The Arizona Department of Economic Security ("ADES") argued that although the evidence showed that the family may need services, the GAL had failed to prove that Children were dependent. Children testified and expressed desires to return home to Parents. They further stated they had either fabricated prior allegations about Parents or exaggerated them. Counsel for Children appeared and urged the court to deny the dependency petitions. Tammy also testified, outlined efforts made to get help for Children's behaviors, and expressed a desire to continue parenting Children. Conversely, the GAL introduced exhibits and lay and expert testimony to support his request for dependency orders.

¶ 5 In April 2007, the juvenile court ruled that Children were dependent as to Parents. Specifically, the court found that Parents had

---

1. We view the evidence in the light most favorable to sustaining the juvenile court's decision.

*Lashonda M. v. Ariz. Dep't of Econ. Sec.,* 210 Ariz. 77, 82, ¶ 13, 107 P.3d 923, 928 (App.2005).

emotionally abused Children, had physically abused Savannah, and that Children had "serious emotional and behavioral issues." The court further found that Parents had failed to provide adequate control of Children, and that "continued custody of the children ... is likely to result in serious emotional or physical damage to the children." This timely appeal followed.[2]

## DISCUSSION

¶ 6 To find Children dependent under A.R.S. § 8–201(13)(a)(i), as alleged by the GAL, the juvenile court was required to find, in relevant part, that Children were "[i]n need of proper and effective parental care and control ... [and have] no parent or guardian willing to exercise or capable of exercising such care and control." Additionally, because Children are Indians, the court was required to ensure compliance with ICWA.[3] Among other things, ICWA requires the following:

> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, *including testimony of qualified expert witnesses,* that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(e) (emphasis added); *see also* Ariz. R.P. Juv. Ct. ("Rule") 55(C).[4]

¶ 7 Parents argue the juvenile court erred by ruling Children dependent because no expert witness testified that Parents' continued custody of Children would likely result in serious emotional or physical damage, as

required by 25 U.S.C. § 1912(e) and Rule 55(C). The GAL does not contend that any expert witness offered such testimony. He responds, however, that § 1912(e) does not require such an explicitly prospective expert opinion. Rather, § 1912(e) is satisfied by evidence establishing a direct causal link between the emotional damage suffered by Children as a result of Parents' abuse or failures to prevent abuse together with several experts' recommendations that neither child be returned to Parents without services and intervention. The issue we must initially resolve, therefore, is whether § 1912(e) requires expert testimony opining on future conditions or whether the court can make the necessary finding relying on expert opinions concerning past and current conditions. We review issues of statutory interpretation de novo as an issue of law. *Stapert v. Ariz. Bd. of Psychologist Exam'rs,* 210 Ariz. 177, 179, ¶ 7, 108 P.3d 956, 958 (App.2005).

¶ 8 We interpret § 1912(e) to effectuate Congress's intent. *Mago v. Mercedes–Benz, U.S.A., Inc.,* 213 Ariz. 404, 408, ¶ 15, 142 P.3d 712, 716 (App.2006). To accomplish this task, we first examine the language of the statute and will ascribe plain meaning to its terms. *Id.* If necessary, we consider secondary principles of statutory interpretation to discern Congress's intent. *Id.*

¶ 9 A plain reading of § 1912(e) does not resolve the pending issue. The statute explicitly requires that qualified expert testimony support a finding that continued custody of a child by the parent or Indian custodian is likely to result in damage to the child. The statute is silent, however, regarding whether a court can make the necessary

---

**2.** ADES did not file an answering brief on appeal, advising this court that "[i]n the proceedings below, the Department did not believe that there was sufficient evidence to support the dependency petition," although ADES did not join in Parents' appeal.

**3.** Congress enacted ICWA "in response to 'an alarmingly high percentage of Indian families ... broken up by the removal ... of their children' and placed in non-Indian homes." *Rachelle S. v. Ariz. Dep't of Econ. Sec.,* 191 Ariz. 518, 519–20, ¶ 10, 958 P.2d 459, 460–61 (App.1998), quoting 25 U.S.C. § 1901(4). Consequently, ICWA provides standards for state-court depen-

dency and termination proceedings involving Indian children. *Id.* at 520, 958 P.2d at 461.

**4.** Rule 55 provides, in relevant part, as follows:

> **C. Burden of Proof.** The petitioner must prove the allegations in the petition by a preponderance of the evidence or, in the case of an Indian child, by clear and convincing evidence. In addition, if the child is an Indian child, the petitioner must prove, by clear and convincing evidence, including testimony from a qualified expert witness, that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

finding inferentially based, at least in part, on qualified expert testimony concerning past and current conditions. We therefore consider secondary sources to determine Congressional intent.

■ ¶ 10 The United States Department of the Interior, Bureau of Indian Affairs has promulgated guidelines for use in interpreting ICWA, which Arizona courts have consistently relied upon. *Guidelines for State Courts; Indian Child Custody Proceedings* ("Guidelines"), 44 Fed.Reg. 67,584–95 (Nov. 26, 1979); *Rachelle S.*, 191 Ariz. at 520, ¶ 12, 958 P.2d at 461. In relevant part, the Guidelines provide as follows:

> D.4. Qualified Expert Witnesses
>
> (a) Removal of an Indian child from his or her family must be based on competent testimony from one or more experts qualified to *speak specifically to the issue of whether continued custody by the parents or Indian custodians is likely to result in serious physical or emotional damage to the child.*

44 Fed.Reg. at 67593 (emphasis added). The commentary to section D.4 further illuminates the nature of the expert opinion testimony required by § 1912(e):

> [Subsection (a)] is intended to point out that the issue on which qualified expert testimony is required is the question of whether or not serious damage to the child is likely to occur if the child is not removed. Basically two questions are involved. First, is it likely that the conduct of the parents will result in serious physical or emotional harm to the child? Second, if such conduct will likely cause such harm, can the parents be persuaded to modify their conduct?
>
> . . . .
>
> [Subsection (b), which discusses characteristics of qualified experts] makes clear that knowledge of tribal culture and child-drearing practices will frequently be very valuable to the court. Determining the like-

lihood of future harm frequently involves predicting future behavior—which is influenced to a large degree by culture. . . . .

*Id.* Thus, the Guidelines clarify that in order to satisfy § 1912(e), a qualified expert must explicitly testify that continued custody by the parents or Indian custodians is likely to result in serious physical or emotional damage to the child. Moreover, such opinions must involve not only whether the parents' conduct will likely result in damaging the child but whether the parents can modify their conduct.

¶ 11 Although the Guidelines are not binding on this court, we find them persuasive and therefore adopt their interpretation of § 1912(e). *Batterton v. Francis*, 432 U.S. 416, 424–25, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977) (noting courts give administrative interpretations of statutory terms important significance although ultimate responsibility for interpreting statute rests with courts); *see also Rachelle S.*, 191 Ariz. at 520, ¶ 12, 958 P.2d at 461 (following Guidelines). Doing so fulfills Congress's preference for keeping Indian children with their families or within their own Indian tribes unless the "strict procedures and . . . stringent requirements" of ICWA are met to justify a contrary result. 44 Fed.Reg. at 67,585–86, § A ("Any ambiguities in any of such [ICWA] statutes . . . shall be resolved in favor of the result that is most consistent with [Congress's] preferences."). Decisions from other courts support this interpretation. *See e.g., In re Baby Boy Doe*, 127 Idaho 452, 902 P.2d 477, 484–86 (1995) (holding 25 U.S.C. § 1912(f) [5] satisfied by qualified expert testimony that permanent removal of child from non-Indian adoptive home would likely result in serious emotional harm to Indian child); *In re N.L.*, 754 P.2d 863, 868 (Okla.1988) (reversing dependency of Indian child as court did not have expert witness testimony about whether continued custody of child by mother would result in harm to child); *E.A. v. State Div. of Family & Youth Servs.*, 46

---

5. Section 1912(f), which addresses termination of parental rights, imposes a higher burden of proof that otherwise mirrors subsection (e):

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

P.3d 986, 992 (Alaska 2002) (noting § 1912(f) requires expert testimony on likelihood of harm to child from continued care by parent but other evidence can support basis for court's finding); *see also* 41 Am.Jur.2d Indians; Native Americans § 130 ("[Q]ualified expert testimony is required in a parental rights termination case about whether serious harm to the Indian child is likely to occur if the child is not removed from the home or if the parent continues to have custody, based upon the particular facts and issues of the case.").

█ ¶ 12 Applying our interpretation of § 1912(e) to this case, we conclude that the GAL failed to prove that Parents' continued custody of Children would likely have resulted in serious emotional or physical damage to them. We reach this conclusion solely because none of the expert witnesses who testified at the dependency hearing offered an opinion on this issue. For this reason alone, we must vacate the juvenile court's order of dependency. In light of our decision, we need not address the other arguments raised by Parents.

## CONCLUSION

¶ 13 For the foregoing reasons, we vacate the juvenile court's dependency order and remand for additional proceedings.

CONCURRING: DANIEL A. BARKER, Presiding Judge and PATRICIA A. OROZCO, Judge.