SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STEVEN H. and TAMMY H., | ) Arizona Supreme Court |
| | ) No. CV-08-0026-PR |
| Appellants, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-JV 07-0076 |
| ARIZONA DEPARTMENT OF ECONOMIC | ) |
| SECURITY, MATTHEW H., SAVANNAH | ) Coconino County |
| H., | ) Superior Court |
| | ) No. MD2006-0031 |
| Appellees. | ) |
| | ) |
| | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Coconino County
The Honorable Margaret A. McCullough, Judge

_____

Opinion of the Court of Appeals Division One
217 Ariz. 315, 173 P.3d 479 (App. 2008)

**VACATED AND REMANDED**
_____


KAISER, JAMES & WILSON P.L.L.C                        Flagstaff
     By   Jeffrey A. James
Attorney for Steven H. and Tammy H.

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                 Phoenix
     By   William V. Hornung,                          Tucson
          Assistant Attorney General
          Dawn R. Williams,                            Tucson
          Assistant Attorney General
Attorneys for Arizona Department of Economic Security

DAVID GOLDBERG, ATTORNEY AT LAW                        Flagstaff
     By   David Goldberg
Attorney for Matthew H. and Savannah H.

SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY          Scottsdale
    By   Charleen H. Greer
        Cheryl J. Scott
Attorneys for Amicus Curiae Salt River Pima-Maricopa
Indian Community

PAUL J. MATTÉ III, ATTORNEY AT LAW                  Phoenix
    By   Paul J. Matté III

And

VIRGINIA MATTÉ, ATTORNEY AT LAW                     Phoenix
    By   Virginia Matté
Attorneys for Intervenor Cherokee Nation of Oklahoma

DAVID P. FRANK, TOHONO O'ODHAM NATION ATTORNEY GENERAL
    By   Samuel F. Daughety                     Sells
Attorneys for Amicus Curiae Tohono O'odham Nation
_____

**R Y A N**, Justice

¶1      In a custody proceeding involving an Indian child, a state court must comply with the Indian Child Welfare Act ("ICWA"), 25 U.S.C. §§ 1901 to 1963 (2000). Under ICWA, before a state court judge may order foster care placement of an Indian child, the judge must make "a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(e). We must decide if § 1912(e) requires explicit expert testimony on the ultimate issue of fact - that continued custody of the Indian child will result in serious emotional or physical damage to the child.

¶2    Matthew and Savannah are the biological children of Tammy H. and the adopted children of Steven H.  The family has had many interactions with Child Protective Services ("CPS") in recent years concerning allegations of emotional and physical abuse of the children by Tammy and Steven.  Once, during a physical examination of Savannah, a Flagstaff police officer observed bruises, some of which were seven inches wide and five inches long.

¶3    In July 2006, a guardian ad litem ("GAL") filed a petition requesting that the court find Savannah dependent as to the parents.[1]  The GAL alleged that Savannah was dependent under Arizona Revised Statutes ("A.R.S.") section 8-201(13)(a)(i) (2007), which defines a dependent child as one "[i]n need of proper and effective parental care and control and who has no parent or guardian . . . willing to exercise or capable of exercising such care and control."  A month later, the GAL filed a supplemental petition asking the court to declare Matthew dependent for the same reasons.  Because Matthew and Savannah are of Indian descent and affiliated with the Cherokee Nation, the custody proceedings were subject to the requirements of

---

[1]    Because Savannah and Matthew had been charged for various criminal offenses before these proceedings, the juvenile court appointed a GAL to represent their interests in the juvenile delinquency proceedings.

ICWA.  25 U.S.C. § 1903(4) (defining "Indian child").[2]

¶4      The juvenile court conducted hearings over eleven days between October 2006 and March 2007.  At the hearings, the GAL called several mental health professionals who had treated the children and counseled the parents.  These expert witnesses testified about educational, psychological, and psychosexual evaluations of the children.  The evaluations concluded that both Matthew and Savannah suffered from significant behavioral, emotional, and psychological dysfunctions.  Expert witness testimony, as well as other evidence in the record, demonstrated that the children's conditions resulted from the abuse they had suffered over the years.  The experts, however, did not specifically opine as to whether continued custody of the children by the parents would likely result in serious emotional or physical damage.[3]

¶5      Savannah testified that she believed that counseling had helped her and she wanted to return to her parents' custody.

_____

[2]     The GAL notified the Cherokee Nation of Oklahoma of the pending dependency proceedings as to Savannah and Matthew on August 16, 2006, and August 23, 2006, respectively.  *See* 25 U.S.C. § 1912(a).  The Nation originally elected not to intervene, but had the right to intervene "at any point in the proceeding[s]."  25 U.S.C. § 1911(c).  On June 4, 2008, after this Court accepted review, the Nation filed a motion to intervene.  Because no party objected, this Court granted the motion.  Thereafter, the Cherokee Nation filed a brief asking us to affirm the court of appeals' decision.

[3]     The expert testimony primarily focused on the grounds for determining dependency under A.R.S. § 8-201(13)(a)(i).

4

Matthew told the court that he had attended individual and family counseling. Tammy testified that she and Steven had made active efforts to parent the children, had sought counseling for both, and had involved them in church youth programs. Finally, the Arizona Department of Economic Security ("DES") advised the court that it did not believe there was sufficient evidence to support the dependency petition.

¶6 At the end of the hearings, the juvenile court found by clear and convincing evidence that the children were "dependent as to Tammy and Steve . . . pursuant to A.R.S. § 8-201(13)." The court found that the parents physically abused Savannah and emotionally abused both Savannah and Matthew; the parents failed or refused entirely to participate in services offered to eliminate the need for the dependency; the parents failed to provide proper and effective control of Matthew and Savannah; and the children had serious emotional and behavioral issues. In addition, the court found that "continued custody of the children by the parent, guardian or Indian custodian is likely to result in serious emotional or physical damage to the children." The court therefore ordered that the children be made wards of the court and placed under the control of DES.[4]

---

[4] When these child custody proceedings began, Matthew was sixteen years old and Savannah was fourteen years old. This case is now moot as to Matthew because he has turned eighteen and ICWA no longer applies to him. *See* 25 U.S.C. § 1903(4).

5

The parents appealed.

¶7     The court of appeals vacated the dependency order. *Steven H. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 315, 319, ¶ 12, 173 P.3d 479, 483 (App. 2008).  The court concluded that 25 U.S.C. § 1912(e) requires that "a qualified expert must *explicitly* testify that continued custody by the parents . . . is likely to result in serious physical or emotional damage to the child."  *Id.* at 318, ¶ 10, 173 P.3d at 482 (emphasis added).  Solely because none of the expert witnesses explicitly testified on this issue, the court held that the GAL "failed to prove that Parents' continued custody of Children would likely have resulted in serious emotional or physical damage to them."  *Id.* at 319, ¶ 12, 173 P.3d at 483.

¶8     The GAL petitioned for review, contending that the court of appeals erred by vacating the juvenile court's dependency petition for the sole reason that no expert witness had explicitly testified regarding how the court should decide the ultimate issue of fact.[5]

---

[5]    As noted above, DES did not support the GAL's dependency petition in the juvenile court.  DES also did not join in the appeal from the juvenile court's order adjudicating the children dependent.  DES filed a response supporting the GAL's petition and filed a supplemental brief after we granted review.  In addition, the Salt River Pima-Maricopa Indian Community and the Tohono O'odham Nation filed amicus briefs urging this Court to affirm the court of appeals' opinion.

6

¶9     We granted review to clarify the role expert testimony has in meeting the requirements of 25 U.S.C. § 1912(e), an issue of first impression and statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II

¶10     In Arizona, dependency adjudications are governed by A.R.S. §§ 8-841 to -847 (2007 & Supp. 2007). Under § 8-844(C)(1)(a), if the court finds by a preponderance of the evidence that the allegations contained in the dependency petition are true, the court must make a finding of dependency. But a different standard of proof, along with a requirement for expert testimony, applies when a dependency proceeding involves an Indian child. 25 U.S.C. § 1912(e).[6] Congress imposed these additional requirements because state courts had historically been too quick to remove Indian children from their parents and communities. *See*, *e.g.*, *Maricopa County Juv. Action No. JS-*

---

[6]   Arizona Rule of Procedure for the Juvenile Court 55(c) parallels the ICWA provision at issue. It provides in part:

> The petitioner must prove the allegations in the petition . . . in the case of an Indian Child, by clear and convincing evidence, *including testimony from a qualified expert witness*, that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

*Id.* (emphasis added).

7

*8287*, 171 Ariz. 104, 106, 828 P.2d 1245, 1247 (App. 1991).

**A**

¶11      When it enacted ICWA in 1978, Congress recognized that "there is no resource . . . more vital to the continued existence . . . of Indian tribes than their children."  25 U.S.C. § 1901(3).  It found that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions."  *Id*. § 1901(4).

¶12      To remedy this harm, Congress declared that the purpose of ICWA is

> to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .

*Id*. § 1902.  The principal goal of ICWA then is to protect and preserve the integrity of America's Indian tribes, while also protecting the interests of Indian children.

**B**

¶13      By requiring a heightened standard of proof for foster care placement and also requiring qualified expert testimony, 25 U.S.C. § 1912(e) furthers Congress's intent to prevent state

8

courts from too readily approving dependency dispositions that remove Indian children from their parents or native communities. The issue we must decide is how specific an expert witness's testimony must be to satisfy § 1912(e)'s requirement that expert testimony support a court's determination that "continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."  The GAL and DES contend that the court of appeals went too far in requiring explicit expert testimony on the ultimate issue.  They argue that such a requirement has the effect of delegating a court's decision to an expert witness.  The GAL and DES maintain that as long as there is some expert testimony in the record concerning a parent's past conduct and current inability to care for the child, a court can infer the likelihood of future emotional or physical damage to the Indian child.  The parents and Indian tribes, on the other hand, argue that ICWA requires explicit expert testimony on the likelihood of future harm.

## C

¶14     Because this issue requires us to interpret a statute, our review is de novo.  *See*, *e.g.*, *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 9, 88 P.3d 159, 161 (2004).  In interpreting a federal statute, "[o]ur task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language

9

must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982)); *see also Navajo Nation v. Hodel*, 645 F. Supp. 825, 827 (D. Ariz. 1986) (stating that, when interpreting an ICWA provision, a court "will not look beyond the clear meaning of express statutory terms unless a literal interpretation would thwart the purpose of the statutory scheme or lead to absurd results"). Given Congress's clear statement of intent with respect to ICWA, its provisions are to be construed liberally in favor of the Indians' interest in preserving family units. *See Doe v. Mann*, 285 F. Supp. 2d 1229, 1234 (N.D. Cal. 2003).

¶15    With these principles in mind, we turn to 25 U.S.C. § 1912(e)'s requirement for expert testimony and what that testimony must address to support a superior court's determination that an Indian child is dependent.

**D**

¶16    Section 1912(e) sets forth two requirements. First, it requires a judge's determination that an Indian child be placed in foster care be supported by clear and convincing evidence that "continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child." § 1912(e). Second, it requires that the evidence include the "testimony of qualified expert

10

witnesses." *Id.*

**¶17** In many ICWA cases, expert testimony may be necessary to educate a court about tribal customs and childrearing practices to diminish any risk of cultural bias. *See, e.g.,* *L.G. v. State*, 14 P.3d 946, 952-53 (Alaska 2000). Indeed, Congress's "primary reason for requiring qualified expert testimony in ICWA . . . proceedings was to prevent courts from basing their decisions solely upon the testimony of social workers who possessed neither the specialized professional education nor the familiarity with Native culture necessary to distinguish between cultural variations in child-rearing practices and actual abuse or neglect." *Id.* (emphasis omitted); *In re N.L.*, 754 P.2d 863, 867 (Okla. 1988); Edward L. Thompson, *Protecting Abused Children: A Judge's Perspective on Public Law Deprived Child Proceedings and the Impact of the Indian Child Welfare Acts,* 15 Am. Indian L. Rev. 1, 79-80 (1990).

**¶18** Expert witnesses who do not possess special knowledge of Indian life may also supply testimony supporting a determination that continued custody will likely result in serious emotional or physical harm to the child. In such a situation, "a professional person with substantial education and experience in the area of his or her specialty may be a qualified expert witness," depending upon the basis urged for removal. *In re N.L.*, 754 P.2d at 867; *see Rachelle S. v. Ariz.*

11

*Dep't of Econ. Sec.,* 191 Ariz. 518, 520-21, ¶¶ 14-16, 958 P.2d 459, 461-62 (App. 1998) (holding that a medical expert on "shaken baby syndrome" who lacked specialized knowledge of Indian culture satisfied ICWA's criteria for expert testimony when the Indian parents were accused of child abuse).

¶19    Neither side disputes that 25 U.S.C. § 1912(e) requires expert testimony; the question is what type of testimony the statute requires.  Some guidance comes from the language of § 1912(e), which requires that "testimony of qualified expert witnesses" be given on the question whether "continued custody of the child . . . is likely to result in serious emotional or physical damage to the child."  The subject matter of that testimony must therefore be forward looking – relating to the likelihood of future harm to the child.  *See E.A. v. State*, 46 P.3d 986, 991 (Alaska 2002) (stating that the state's proof that the child is likely to suffer serious emotional or physical damage "must include qualified expert testimony"); *C.J. v. State*, 18 P.3d 1214, 1218 (Alaska 2001) (same).  Expert testimony limited to past harm, such as the physical examination of the child after the alleged incident, cannot suffice.

¶20    Although there must be expert testimony addressing the future harm determination, "ICWA does not require that the experts' testimony provide the sole basis for the court's

12

conclusion; ICWA simply requires that the testimony support that conclusion." *E.A.*, 46 P.3d at 992 (discussing parental termination proceeding under 25 U.S.C. § 1912(f));[7] *see also Thomas H. v. State,* 184 P.3d 9, 17 (Alaska 2008) ("ICWA requires that expert testimony support a decision to terminate parental rights, based upon the particular facts and issues of the case.") (internal quotation marks omitted).

**E**

**¶21**     A determination that an Indian child will likely suffer serious harm if returned to the custody of the parent, requires clear and convincing evidence "both that [the parent's] conduct is likely to harm [the child] and that [the parent] is unlikely to change her conduct." *E.A.*, 46 P.3d at 992; *accord Thomas H.,* 184 P.3d at 19. The determination of a likelihood of future harm must include expert testimony that addresses this issue. *See E.A.*, 46 P.3d at 991 ("We hold that qualified expert

---

[7]     Termination of a parent's custody of an Indian child is governed by 25 U.S.C. § 1912(f). Section 1912(f) provides that

> [n]o termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

Although § 1912(f) imposes a higher burden of proof, it otherwise mirrors the evidentiary requirements of § 1912(e). Thus, cases interpreting the requirement for expert testimony in § 1912(f) may be used in analyzing § 1912(e).

testimony in combination with substantial evidence in the record supported the court's determination that [the child] would likely be harmed if returned to [the parent]."); *see also D.E.D. v. State*, 704 P.2d 774, 783 (Alaska 1985) (affirming superior court's order terminating parental rights in light of expert testimony that mother's behavior would not likely change based on her past conduct and her lack of response to the services offered); *Rachelle S.*, 191 Ariz. at 521, ¶ 16, 958 P.2d at 462 (affirming the lower court's dependency order after expert testified that the Indian child had a very high risk of mortality and morbidity continuing in life and that the family members evinced a lack of motivation to protect the child in the future).

¶22    In short, in addition to any evidence establishing the state statutory grounds for dependency, ICWA requires qualified expert testimony that addresses the determination that the Indian child is at risk of future harm unless the child is removed from the parents' custody.  But the statute does not require that the necessary expert testimony recite the specific language of § 1912(e); nor need such testimony be expressed in a particular way.  As long as the expert testimony addresses the likelihood of future harm, it will suffice.[8]

---

[8]    For example, in *State ex rel. State Office for Services to Children and Families v. Lucas*, which dealt with Indian children

14

## III

### A

¶23   The court of appeals found 25 U.S.C. § 1912(e) ambiguous because it is "silent . . . regarding whether a court can make the necessary finding inferentially based, at least in part, on qualified expert testimony concerning past and current conditions." *Steven H.*, 217 Ariz. at 317-18, ¶ 9, 173 P.3d at 481-82. The court thus turned to "secondary sources to determine Congressional intent." *Id*. at 318, ¶ 9, 173 P.3d at 482. Specifically, the court considered the *Guidelines for State Courts; Indian Child Custody Proceedings*, 44 Fed. Reg. 67,584 (Nov. 26, 1979). *Steven H.*, 217 Ariz. at 318, ¶ 10, 173 P.3d at 482.

### B

¶24   To assist state courts in complying with ICWA, the United States Department of the Interior, Bureau of Indian

---

whose mother abused drugs and neglected the children, the court pointed to testimony that included a psychologist's opinion that the mother's risk of drug relapse would be high if she were left to care for a drug-addicted baby; a pediatrician's conclusion that the youngest child would be at risk of being abused if she went back to an environment in which the mother was using drugs; and the opinion of a former nurse that the mother had a "very guarded prognosis" and that her "chance of recovery is highest when she is responsible only for herself." 33 P.3d 1001, 1005-06 (Or. Ct. App. 2001). Although these expert witnesses did not explicitly testify to the ultimate issue, their testimony addressed the requirement that continued custody was likely to result in serious damage to the children; the court thus found that the petitioner satisfied the requirements of ICWA. *Id.*

Affairs, promulgated guidelines. The guidelines are not binding. *See* 44 Fed. Reg. at 67,584. Nonetheless, courts have looked to them for assistance in interpreting and applying the provisions of ICWA. *See Rachelle S.*, 191 Ariz. at 520, ¶ 12, 958 P.2d at 461; *accord In re N.L.*, 754 P.2d at 867.

¶25     The court of appeals relied on Section D.4(a) ("Qualified Expert Witnesses") of the guidelines, which provides that

> [r]emoval of an Indian child from his or her family must be based on competent testimony from one or more experts *qualified* to speak specifically to the issue of whether continued custody by the parents or Indian custodians is likely to result in serious physical or emotional damage to the child.

44 Fed. Reg. at 67,593 (emphasis added); *Steven H.*, 217 Ariz. at 318-19, ¶¶ 10-11, 173 P.3d at 482-83.[9] Because the parents never claimed that the expert witnesses were not qualified, we do not find Section D.4(a) particularly persuasive to the question presented in this case.

---

[9]     The commentary to Section D.4 explains,

> [Subsection (a)] is intended to point out that the issue on which qualified expert testimony is required is the question of whether or not serious damage to the child is likely to occur if the child is not removed. Basically two questions are involved. First, is it likely that the conduct of the parents will result in serious physical or emotional harm to the child? Second, if such conduct will likely cause such harm, can the parents be persuaded to modify their conduct?

44 Fed. Reg. at 67,593.

16

**C**

¶26       We conclude that Section D.3 ("Standards of Evidence") of the guidelines is the more relevant provision.  That section addresses the necessary proof and the role of expert testimony in supporting that proof.

¶27       In relevant part, Section D.3(a) states:

> The court may not issue an order effecting a foster care placement of an Indian child unless clear and convincing evidence is presented, *including the testimony of one* [or] *more qualified expert witnesses, demonstrating* that the child's continued custody with the child's parents [or] Indian custodian is likely to result in serious emotional or physical damage to the child.

44 Fed. Reg. at 67,592 (emphasis added).  Section D.3(c) further provides that

> [t]o be clear and convincing, the evidence must show the existence of particular conditions in the home that are likely to result in serious emotional or physical damage to the particular child who is the subject of the proceeding.  *The evidence must show the causal relationship between the conditions that exist and the damage that is likely to result.*

*Id*. at 67,593 (emphasis added).

¶28       Section D.3 spells out the requirement for expert testimony, and what that testimony, in combination with other evidence, must address.  This guideline confirms our reading of

17

the statutory text.

## IV

**¶29**    In summary, a party seeking foster care placement of an Indian child under § 1912(e) must present qualified expert testimony regarding the likelihood of future harm to the child. But we conclude that that expert testimony need not parrot the language of the statute. So long as expert testimony addresses the issue that continued custody of the Indian child by the parent is likely to result in emotional or physical harm, this requirement of § 1912(e) is satisfied.

## V

**¶30**    Because the court of appeals reviewed the expert testimony in the record under a different standard than we announce today, we remand to that court for it to reconsider that testimony in light of our interpretation of what 25 U.S.C. § 1912(e) requires.

## VI

**¶31**    For the foregoing reasons, we vacate the opinion of the court of appeals, and remand to that court for further proceedings consistent with this opinion.

_____
Michael D. Ryan, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice