NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHARLES P., STARLENE M., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.D., S.M., J.D., R.D., HOPI TRIBE,
*Appellees*.

No. 1 CA-JV 20-0357
FILED 7-22-2021

Appeal from the Superior Court in Maricopa County
No. JD31456
The Honorable Lori Horn Bustamante, Judge

**AFFIRMED**

COUNSEL

Law Office of Ed Johnson PLLC, Peoria
By Edward D. Johnson
*Counsel for Appellant Charles P.*

Law Office of H. Clark Jones LLC, Mesa
By H. Clark Jones
*Counsel for Appellant Starlene M.*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

The Webb Law Group, Flagstaff
By Brian Webb
*Counsel for Appellee Hopi Tribe*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Chief Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**F U R U Y A**, Judge:

¶1 Starlene M. ("Mother") and Charles P. ("Father") appeal the superior court's order terminating their parental rights to their children. On appeal, Mother contends the Department of Child Safety ("DCS") provided insufficient reunification services. Father challenges the sufficiency of the evidence that his continued custody would result in serious emotional or physical damage to the children and the court's deviation from placement preferences under the Indian Child Welfare Act ("ICWA"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Mother and Father are the biological parents of minor children J.D.M., born March 2015, and R.D.M., born June 2017, and Mother is also the biological mother of T.D.M., born October 2006, and S.M., born August 2009 (collectively, the "children"). The children are enrolled members of the Hopi Tribe and "Indian child[ren]" as defined by ICWA. *See* 25 U.S.C. §§ 1901–1963.

¶3 In April 2018, DCS investigated Mother and Father following a report of alleged substance abuse and domestic violence. DCS had previously received at least ten reports that Father and Mother engaged in severe domestic violence in the presence of the children. Upon investigation, DCS observed unsanitary conditions, minimal food, and empty alcoholic beverage containers throughout the home. The children were found outside playing amongst sharp metal scraps. The children had not been enrolled in school for more than a year.

¶4 DCS removed the children from Mother's and Father's care and filed a dependency petition. The children were found dependent in November 2018 and a case plan for family reunification was adopted. The case plan required Mother to demonstrate sobriety, create a domestic violence prevention plan, address her mental health and coping mechanisms, and maintain housing and stable employment. DCS referred Mother for substance-abuse testing, substance-abuse treatment, parent-

aide services, case-aide services, and transportation services. Mother was also referred for a psychological evaluation.

¶5        The case plan required Father to acknowledge his domestic violence and substance abuse and to implement prevention plans. DCS referred Father for substance-abuse testing, substance-abuse counseling, individual counseling with a domestic-violence component, parent-aide services, supervised visitation, case-aide visitation, transportation services, and a psychological evaluation. Father denied having issues with substance abuse or domestic violence. Father infrequently participated in services and failed to complete domestic-violence counseling.

¶6        In February 2020, after the court changed the case plan to severance and adoption, DCS filed a motion to terminate Mother's and Father's parental rights on the ground that the children had been in out-of-home placement for more than fifteen months. After adjudication in November 2020, the court granted the motion. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(8)(c). Mother and Father timely filed notices of appeal, and we have jurisdiction pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶7        To terminate a parent's rights, the superior court must find clear and convincing evidence to support at least one statutory ground for termination. A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C). Termination must also be shown to serve a child's best interests by a preponderance of the evidence. Ariz. R.P. Juv. Ct. 66(C). In ICWA cases, a court must also be persuaded that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 333, ¶ 3 (2009) (citing 25 U.S.C. § 1912(d)); *accord* Ariz. R.P. Juv. Ct. 66(C). The court must further make "a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." *Valerie M.*, 219 Ariz. at 333, ¶ 3 (citing 25 U.S.C. § 1912(f)); *accord* Ariz. R.P. Juv. Ct. 66(C).

¶8        In this case, the court ordered termination under A.R.S. § 8-533(B)(8)(c), which requires that: (1) the parent be "unable to remedy the circumstances that cause[d] the child to be in an out-of-home placement," (2) there be "a substantial likelihood that the parent will not be capable of

exercising proper and effective parental care and control in the near future," and (3) DCS has provided appropriate reunification services. We "will affirm the court's termination order absent an abuse of discretion or unless the court's findings of fact were clearly erroneous." *E.R. v. DCS*, 237 Ariz. 56, 58, ¶ 9 (App. 2015) (quotations omitted). A finding is clearly erroneous if no reasonable evidence supports it. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## I.       DCS' Active Efforts Toward Reunification

**¶9**        Mother does not challenge that DCS established the statutory ground for termination by clear and convincing evidence, nor that DCS proved beyond a reasonable doubt that Mother's continued custody would likely result in serious emotional or physical damage to the children. Instead, Mother argues—for the first time on appeal—that DCS failed to make active efforts to prevent the break-up of her family because it offered her insufficient services. At no time during the two years and five months of dependency proceedings did Mother object to the sufficiency of the services DCS provided. Because Mother did not make a timely objection, she has waived this argument. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178–79, ¶¶ 16, 18 (App. 2014).

**¶10**        Waiver notwithstanding, Mother's arguments are without merit. Preliminarily, Mother concedes that DCS offered a wide array of services, in which she chose not to participate. Following Mother's psychological evaluation in April 2019, she was diagnosed with bipolar II disorder, post-traumatic stress disorder, alcohol-abuse disorder, and a mild intellectual disability. The evaluating psychologist recommended certain services (some of which DCS was already providing), individual counseling, and a psychiatric evaluation. DCS requested Mother self-refer for individual counseling and the recommended psychiatric treatment.

**¶11**        Mother contends that DCS failed to provide her with the recommended psychiatric evaluation. But the record reflects that after DCS asked Mother to self-refer, Mother reported that she was receiving in-patient care and counseling services through Southwest Garden Lakes ("Southwest"). And when Mother later indicated she was no longer receiving these services, DCS offered to have a child-safety specialist help her with the self-referral process. On multiple occasions, Mother's case manager also requested that Mother come to the office for self-referral assistance. However, Mother declined these offers, claiming first that she did not need the services and later that she was already receiving the services independent of DCS.

¶12        At trial, Mother testified that she underwent a psychiatric evaluation through Southwest in December 2019 and received treatment. She further testified that she was receiving services through Southwest, had a psychiatrist visit her at home, and had participated in individual counseling in 2020. The ICWA expert stated that DCS had made active efforts towards family reunification but requested that Mother be given additional time to participate in services. Given this history, the court's finding that DCS made "diligent and active efforts by providing an array of reunification services" is supported by sufficient evidence. Mother has shown no abuse of discretion.

## II.    Evidence and Likelihood of Potential Emotional or Physical Damage to the Children

¶13        Father does not dispute that the children were placed in out-of-home care for more than fifteen months, nor that DCS made active efforts towards reunification. Rather, Father contends the evidence does not support the court's finding that his continued parental custody would likely cause serious emotional or physical harm to the children.

¶14        In termination proceedings involving an Indian child, "the moving party or petitioner must prove, beyond a reasonable doubt, including testimony from a qualified expert witness, that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." Ariz. R.P. Juv. Ct. 66(C); *accord* 25 U.S.C. § 1912(f). Evidence must show "that the parent's conduct is likely to harm the child and that the parent is unlikely to change [his or] her conduct." *Steven H. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 566, 571–72, ¶ 21 (2008).

¶15        The record supports the court's finding that Father would likely cause the children serious emotional or physical damage due to his "unaddressed issues related to domestic violence and substance abuse." Under his care, the children experienced periodic homelessness and unsanitary living conditions. Father became violent when intoxicated and at times drove the children in his car while under the influence. As a result of having witnessed prior domestic violence, S.M. feared calling the police when Father was choking Mother. Father missed all but three of his scheduled drug tests, tested positive for alcohol twice, and failed to engage in multiple substance-abuse treatment referrals throughout the two-and-a-half-years of proceedings.

**¶16**        The record also supports the court's finding that Father's problematic behavior is likely to continue.    Failure to complete reunification services is reasonable evidence that a parent's issues will persist for an indeterminate period. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29 (App. 2010). Here, Father did not complete parent-aide services, had not engaged in domestic-violence treatment, and failed to secure stable housing. Moreover, at trial, Father denied having any issues with substance abuse or domestic violence. DCS presented evidence that Father was still unable to protect the children despite providing services over a two-year period. Finally, the ICWA expert opined that returning the children to Mother or Father could result in emotional or physical harm to the children.

**¶17**        The record supports the court's finding beyond a reasonable doubt that Father's renewed custody would likely result in serious emotional or physical damage to the children, and he was unlikely to change. Therefore, Father has shown no error.

## III.    Good Cause to Deviate from ICWA Placement Preferences

**¶18**        Father argues that the court lacked good cause to deviate from ICWA placement preferences. "We review a finding of good cause to deviate from ICWA preferences for an abuse of discretion." *Navajo Nation v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 339, 343, ¶ 14 (App. 2012). The order of preferential placement of an Indian child under 25 U.S.C. § 1915(b) is as follows:

> (i)      a member of the Indian child's extended family;
>
> (ii)     a foster home licensed, approved, or specified by the Indian child's tribe;
>
> (iii)    an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or
>
> (iv)    an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

**¶19**        Father claims that "the record is devoid on the factors that caused the court to make the finding that there was good cause to deviate from the ICWA placement preferences." To the contrary, the court referenced the Bureau of Indian Affairs Guidelines for State Courts and Agencies in Indian Child Custody Proceedings (the "Guidelines"), in its

finding of good cause. The court detailed the following four factors it used from the Guidelines to determine good cause to deviate from placement preferences:

> (1) [T]he parents' requests; (2) the child's requests; (3) 'extraordinary physical or emotional needs of the child,' which 'does not include ordinary bonding or attachment that may have occurred as a result of a placement or the fact that the child has, for an extended amount of time, been in another placement that does not comply with the Act;' and (4) unavailability of a placement after a showing by the agency and a determination by the court 'that active efforts have been made to find placements meeting the preference criteria, but none have been located.'

(quoting Guidelines, 80 Fed. Reg. 10146-02 at 10158).

¶20　　　　The court provided a detailed discussion justifying why good cause existed to deviate from preferred placement. The court noted that the children were initially placed with their maternal aunt and uncle until the aunt indicated she could no longer care for all of the children. T.D.M. was the only child left in the aunt's care but later requested to be with his siblings in foster care. DCS made active efforts to locate ICWA-compliant family members, but all were either unwilling or inappropriate placements. Family members also indicated that they were willing to ensure the children's continued exposure to Hopi culture while in foster care. Finally, the court noted that the children had a strong bond with their current placement, and the Hopi Tribe expressed no objection to it. The record also demonstrates that DCS attempted to locate a preferred placement through a family friend but found no suitable home. Having detailed the unavailability of a preferential placement after active efforts by DCS, the court found good cause to deviate from the placement criteria, and Father has shown no abuse of discretion.

## CONCLUSION

**¶21**     Because Mother and Father have shown no abuse of discretion or error, we affirm the order terminating their parental rights.



AMY M. WOOD • Clerk of the Court
FILED:     AA