NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AIMEE H.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, L.H.,
CHEROKEE NATION OF OKLAHOMA,
*Appellees*.

No. 1 CA-JV 20-0327
FILED 8-19-2021

Appeal from the Superior Court in Maricopa County
No. JD527310
The Honorable Connie Contes, Judge *Retired*

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Paul J. McMurdie joined.

---

**W E I N Z W E I G**, Judge:

**¶1** Aimee H. ("Mother") appeals the juvenile court's order terminating her parental rights to her daughter. Because we find no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** Mother has a long history of substance abuse. The Department of Child Safety removed her first two children after they tested positive for methamphetamine at birth. Her parental rights to both kids were terminated based on chronic substance abuse in 2015 and 2017.

**¶3** Mother delivered L.H., her third child, at home in October 2017. She did not, however, take L.H. to see a doctor until February 2018, when L.H. required emergency surgery to relieve an intestinal blockage. L.H. spent over two weeks in the hospital. Hospital staff contacted DCS based on Mother's "odd behavior." Mother shaved her daughter's hair before DCS investigators could test for methamphetamine. DCS referred Mother for in-home family preservation services and implemented a safety plan that required drug testing and prohibited unsupervised contact between Mother and L.H.

**¶4** Over the next few weeks, Mother tested positive for methamphetamine, missed a pretrial dependency conference, missed a drug test and submitted a diluted urine sample. DCS also learned that Mother twice violated the safety plan, including when her boyfriend left L.H. alone with Mother. DCS removed L.H. from Mother's care in March 2018. Although L.H. qualifies as an Indian child under the Indian Child Welfare Act, DCS could not find an ICWA-compliant placement, so L.H. was placed in a licensed, non-ICWA-compliant foster home placement.

**¶5** Mother continued to struggle, missing drug tests and resisting drug treatment. She tested positive for methamphetamine in January 2019, February 2019 and March 2019. And despite completing an inpatient drug treatment program in May 2019, Mother again tested

2

positive for methamphetamine in July 2019, August 2019, September 2019, November 2019 and January 2020.  She missed almost half her drug tests between February 2020 and May 2020, and missed all her drug tests between May 2020 and June 2020.

**¶6**　　　　In October 2019, DCS moved to terminate Mother's parental rights to L.H. based on chronic abuse of dangerous drugs and six-months, nine-months and fifteen-months out-of-home placement.  At trial in July 2020, the juvenile court heard testimony from the assigned DCS case manager, a DCS case aide, Mother, two character witnesses, and an expert from the Cherokee Nation to which Mother belonged.  The court found that DCS proved all four termination grounds by clear and convincing evidence and that termination was in the child's best interests.  The court also found that L.H. would suffer serious emotional or physical damage if she remained in Mother's custody.

**¶7**　　　　Mother timely appealed.  We have jurisdiction.  A.R.S. §§ 8-235(A), 12-120.21, and -2101(A)(1).

## DISCUSSION

### I.　　The Expert Testimony Satisfied the Requirements of ICWA

**¶8**　　　　Mother first argues the juvenile court erroneously terminated her parental rights because the expert witness from the Cherokee Nation did not connect Mother's substance abuse to whether L.H. would suffer serious emotional harm or physical damage if Mother maintained custody, as required by ICWA.  This court reviews de novo the interpretation and application of ICWA.  *Michael J., Jr. v. Michael J., Sr.*, 198 Ariz. 154, 156, ¶ 7 (App. 2000).

**¶9**　　　　We discern no error.  Before terminating parental rights to an Indian child, ICWA requires the juvenile court to find "evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."  25 U.S.C. § 1912(f).  But Mother mistakes the purpose of ICWA's expert witness requirement, which forces state courts to assess the likelihood of serious emotional or physical damages in the "context of the prevailing cultural and social standards of the Indian child's Tribe."  Bureau of Indian Affs., *2016 Guidelines for Implementing the Indian Child Welfare Act*, 55 https://www.bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf (explaining that an expert witness provides "the cultural and social standards prevailing in Indian communities and families").  Mother

does not and cannot argue that methamphetamine abuse is less likely to harm an Indian child; nor does she contend that prevailing cultural or social standards in the Cherokee Nation are more tolerant of methamphetamine abuse.

**¶10**     ICWA requires "the evidence must show a causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage." 25 C.F.R. § 23.121(c). To that end, the expert witness occupies a supporting role, ensuring that cultural bias is not a prevailing reason for separating the Indian child from its parents. *See Brenda O. v. Ariz. Dep't of Econ. Sec.*, 226 Ariz. 137, 142, ¶ 23 (App. 2010) (noting that ICWA does not require the expert's testimony to be the sole basis for the court's conclusion); *see 2016 Guidelines for Implementing the Indian Child Welfare Act*, 55. The expert witness must therefore address "the likelihood of future harm," but not in any "particular way." *Steven H. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 566, 572, ¶ 22 (2008).

**¶11**     The Cherokee Nation's expert witness satisfied ICWA's requirement here by explaining what behavioral changes the Nation required before reuniting Mother and the child, and by sharing the Nation's belief that Mother's continued custody of L.H. would likely result in serious emotional and physical damage to the child.

## II.     The Department Proved Grounds for Termination by Clear and Convincing Evidence

**¶12**     Mother also challenges the juvenile court's finding of statutory grounds for termination based on chronic drug abuse and time in out-of-home placement. To terminate parental rights, the court must find one statutory ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence, and that termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149, ¶ 8 (2018). We will affirm a severance order unless it is clearly erroneous, accepting the court's findings of fact unless unsupported by reasonable evidence. *Jesus M. v. Arizona Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). And when, as here, the juvenile court finds four separate statutory grounds for termination, we affirm if the record supports any of them. *Id.* ¶ 3.

**¶13**     Severance based on fifteen months' time-in-care under A.R.S. § 8-533(B)(8) requires proof that (1) a child has been placed in out-of-home care for at least fifteen months; (2) DCS "has made a diligent effort to

provide appropriate reunification services"; (3) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement"; and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." The relevant circumstances are those "existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96, ¶ 31 n.14 (App. 2009) (internal quotation marks omitted).

**¶14** Mother challenges only the fourth element on appeal. She argues the court erred in finding a substantial likelihood she would be unable to parent effectively in the near future. We disagree. The record contains reasonable evidence to support the court's finding. Mother continued to test positive for methamphetamine throughout the dependency and termination proceedings. And while Mother generally points to "significant changes," including a new support system, this court does not reweigh evidence on appeal. *See Alma S.*, 245 Ariz. at 151-52, ¶¶ 18-19 (2018). We find no error.

### III. The Juvenile Court Did Not Abuse Its Discretion in Deviating from ICWA-Preferred Placements

**¶15** Mother next argues that DCS failed to maintain the Native American family unit under ICWA because L.H. was placed in a non-Native American placement. *See* 25 U.S.C. § 1915(a), (b) (2016).

**¶16** Mother's argument is premature, however, because a termination of parental rights does not include an order for placement. After termination of parental rights to an Indian child concludes, the superior court decides whether the post-severance placement is ICWA-compliant. The court's decision to terminate parental rights "is separate from and preliminary to its determination of placement after severance." *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370-71, ¶ 2 (App. 2009). The juvenile court's termination order thus states: "The Department will continue to work with the Cherokee Tribe of Oklahoma in finding an ICWA-compliant placement."

## CONCLUSION

¶17       We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA