NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO I.C.

No. 1 CA-JV 24-0090

FILED 11-26-2024

Appeal from the Superior Court in Maricopa County
No. JS520729
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant Ian C.*

Fox Law Group, P.C., Gilbert
By Ardene Fox
*Counsel for Appellee Leslie R.*

**MEMORANDUM DECISION**

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge David D. Weinzweig joined.

**F U R U Y A**, Judge:

**¶1**　　　　Ian C. ("Father") appeals the juvenile court's order terminating his parental rights to his child, I.C. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　Father and Leslie R. ("Mother") are the biological parents of I.C., born in 2017. The parents' relationship ended in 2018 and they stipulated to orders regarding legal decision-making, parenting time, and child support. From 2018 to 2020, Father exercised parenting time with I.C. but he repeatedly failed to follow the stipulated parenting-time order. For example, when Father was unable to exercise his parenting time, he often failed to notify Mother in advance and respond to her messages for rescheduling. Father also refused to address Mother's concerns about his alcohol consumption after Mother noticed Father smelled of alcohol on two occasions when he dropped off I.C. after his parenting time. Further, Father made his last child support payment in 2019.

**¶3**　　　　In March 2020, Father told Mother he would not be exercising his parenting time because of his concerns related to the COVID-19 pandemic and societal unrest. Father sent his last message to Mother directly inquiring about I.C. in June 2020 and he has not exercised his parenting time with I.C. since then. Mother did not initiate any contact with Father after his last contact.

**¶4**　　　　In 2023, Mother filed a petition for termination of Father's parental rights pursuant to the abandonment, neglect, and chronic substance-abuse grounds. *See* Arizona Revised Statutes ("A.R.S.") § 8-533(B)(1), (2), (3). The court held a three-day hearing. Because I.C. qualifies as an "Indian child,"[1] the court evaluated whether the evidence satisfied the

---

[1]　　　　*See* 25 U.S.C. § 1903(4) (defining an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian

requirements of the Indian Child Welfare Act ("ICWA"). At the hearing, an expert from the Osage Nation opined that Mother had made active efforts to prevent the breakup of the Indian family and that Father's continued custody of, or interaction with, I.C. is likely to cause emotional harm to I.C.

**¶5**        The court terminated Father's parental rights to I.C., finding he abandoned I.C., and termination of his parental rights is in the best interests of I.C. The court also found active efforts to prevent the breakup of the Indian family were made and unsuccessful, and the continued custody by Father is likely to result in serious emotional or physical damage to I.C.

**¶6**        We have jurisdiction over Father's timely appeal under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-2102(A)(1).

## DISCUSSION

**¶7**        A parent's right to care, custody, and control of his child is fundamental but not absolute. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 476 ¶ 18 (2023). A court may terminate parental rights if it finds, by clear and convincing evidence, the existence of at least one of the statutory grounds under A.R.S. § 8-533(B) and, by a preponderance of the evidence, that termination is in the child's best interests. *Id.* at 477 ¶ 20.

**¶8**        In reviewing a termination order, we accept the court's factual findings if reasonable evidence and inferences support them. *Brionna J.*, 255 Ariz. at 478 ¶ 30. We do not reweigh evidence because "the juvenile court is in the best position to weigh evidence and assess witness credibility." *Id.* We will affirm the court's "legal conclusions regarding the statutory ground for termination . . . unless they are clearly erroneous." *Id.* at 478–79 ¶ 31. "In making this determination, the question of whether the statutory factor is supported by the mandated quantum of evidence will not be disturbed unless . . . as a matter of law [] no one could reasonably find the evidence to be [that quantum]." *Id.* (citation omitted).

**¶9**        Where ICWA applies, as here, the court must also find (1) "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful;" and (2) evidence beyond a reasonable doubt that the parent's continued custody of the child

tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe").

is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(d), (f); Ariz. R.P. Juv. Ct. 353(d)(1).

¶10        Father challenges both prongs under ICWA. He argues the juvenile court erred in finding (1) Mother made active efforts and these efforts were unsuccessful in preventing the breakup of the Indian family; and (2) the continued custody by Father is likely to result in serious emotional damage to I.C. because no expert testified regarding serious emotional damage to her.

**I.       Reasonable Evidence Supports the Court's Finding Mother Met the Active Efforts Requirement of 25 U.S.C. § 1912(d).**

¶11        In Arizona, "[w]hat constitutes 'active efforts' will vary, depending on the circumstances, the asserted grounds for severance and available resources." *S.S. v. Stephanie H.*, 241 Ariz. 419, 425 ¶ 21 (App. 2017) (quoting 25 U.S.C. § 1912(d)). In a private abandonment proceeding brought by one parent against another, "active efforts" are those initiatives "aimed at promoting contact by a parent with the child and encouraging that parent to embrace his or her responsibility to support and supervise the child." *Id.* ¶ 22. Those might include, by way of example, "informing the parent about the child's educational progress and interests; sending the parent photographs of the child; keeping the parent informed of irregular but significant expenses, such as medical expenses, to which the parent would be expected to contribute; and, where appropriate, inviting the parent to school and extracurricular events and allowing the child to accept communications from the parent." *Id.* ¶ 23. But neither ICWA nor Arizona law mandates that a party requesting termination of the other's parental rights "provide every imaginable service or program designed to prevent the breakup of the Indian family before the court may find that "active efforts" took place. *Yvonne L. v. Arizona Dep't of Econ. Sec.*, 227 Ariz. 415, 423 ¶ 34 (App. 2011). And active efforts do not obligate one parent to force the other to participate in services; rather, the law requires that the parent facing termination of their parental rights has sufficient time and opportunity to participate in programs designed to help them become an effective parent. *See Id.* Moreover, ICWA does not require a parent to provide services that are futile. *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34 (App. 1999).

¶12        Here, the court found Mother encouraged Father to seek mental health treatment and kept Father informed about I.C.'s interests and needs. The court also found Mother consistently followed up with Father regarding his parenting time and accommodated Father's requests for

additional time. But Father repeatedly failed to cooperate with Mother or to show up for agreed-upon parenting time. The court further found although Mother did not initiate contact with Father after 2021, her "actions must be viewed in the context of her failed prior active efforts." This statement combined with the other findings persuades us that the court implicitly found any further efforts after 2021 would have been futile. *See id.*

¶13            Therefore, given the very deferential standard applicable on appeal, the court reasonably found that Mother made active efforts to prevent the breakup of the family and these efforts were unsuccessful.

## II.    Reasonable Evidence Supports the Court's Finding the Continued Custody by Father is Likely to Result in Serious Emotional or Physical Damage to I.C.

¶14            Under ICWA, the juvenile court must find "beyond a reasonable doubt, with evidence that must include testimony from a qualified expert witness, that continued custody of an Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." Ariz. R.P. Juv. Ct. 353(d)(1).

¶15            Father argues that the expert's failure to specify that the emotional damage to I.C. would be "serious" made the expert's opinion inadequate to satisfy ICWA's requirement. Not so. Our supreme court has stated that expert testimony does not need to recite the specific language of the statute. *Steven H. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 566, 572 ¶ 22 (2008). And the supreme court further observed that "[a]lthough there must be expert testimony addressing the future harm determination, the ICWA does not require that the experts' testimony provide the sole basis for the court's conclusion; ICWA simply requires that the testimony support that conclusion." *Id.* at 185 ¶ 20 (quotation omitted).

¶16            Here, the juvenile court considered the record as a whole and found continued custody by Father would likely result in serious emotional or physical damage to I.C. The expert's testimony supports this conclusion. Further, the court outlined concerns about Father's alcohol use and mental stability. And the court found re-engaging I.C. with Father — whom she no longer knows — would be confusing and emotionally detrimental. This was sufficient.

¶17            True, a different interpretation of the evidence is feasible. But we are required to defer to the court's findings where the record contains

substantial evidence supporting them. *Brionna J.*, 255 Ariz. at 478 ¶ 30. It does and we see no error.

## CONCLUSION

¶18      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV