NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ERIK T., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, S.T., *Appellees.*

No. 1 CA-JV 15-0274
FILED 1-28-2016

Appeal from the Superior Court in Maricopa County
No. JD27066
The Honorable William R. Wingard, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee DCS*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

---

J O H N S E N, Judge:

¶1        Erik T. ("Father") appeals the superior court's order terminating his parental rights.  For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Father is the parent of an Indian child ("Child") born in April 2010.[1]  Father was incarcerated from November 2010 until October 2012.  Shortly after his release, Father was convicted of aggravated assault and sentenced to 10.5 years' incarceration beginning in December 2012.  The Department of Child Safety ("DCS") took Child and his two half-siblings into custody in September 2013 because of allegations of substance abuse and neglect by their mother ("Mother").[2]  The superior court found Child dependent as to Mother and Father in December 2013.  In March 2015, DCS moved to terminate parental rights to Child and his two half-siblings.  The court terminated Mother's parental rights; she is not a party to this appeal.  After a trial, the court terminated Father's parental rights due to his incarceration, pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4) (2016).[3]

---

[1]        Because Child's mother is an enrolled member of the Navajo Nation and Child is eligible for enrollment, he is an Indian child pursuant to the Indian Child Welfare Act.  *See* 25 U.S.C. § 1903(4) (2016).

[2]        Pursuant to S.B. 1001, Section 157, 51st Leg., 2d Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter.  *See* ARCAP 27.

[3]        Absent material revision after the relevant date, we cite a statute's current version.

**¶3**       Father timely appealed.  We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A) (2016), 12-2101 (2016) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

### A.    Legal Principles.

**¶4**       The right to custody of one's child is fundamental but not absolute.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000).  The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds set out in A.R.S. § 8–533(B).  *Michael J.*, 196 Ariz. at 249, ¶ 12.  Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interests.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  We review a termination order for an abuse of discretion.  *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).  Because the superior court is in the best position to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them.  *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

### B.    Best-Interests Determination Under § 8-533(B).

**¶5**       On appeal, Father does not contest the superior court's finding by clear and convincing evidence of facts permitting severance under A.R.S. § 8-533(B)(4) (parent "deprived of civil liberties due to the conviction of a felony" that "is of such length that the child will be deprived of a normal home for a period of years").  Father instead takes issue with the court's finding that severance is in Child's best interests.  *See* A.R.S. § 8-533(B).  A best-interests finding may be supported by evidence of an affirmative benefit or a detriment to the child if the relationship were to continue.  *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 557 (App. 1997).  Being available for adoption is an affirmative benefit that can support a finding that termination is in a child's best interests.  *See Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).  Whether severance is in a child's best interests is a question of fact, and we view the evidence and draw all reasonable inferences from the evidence in favor of supporting the superior court's findings.  *Jesus M.*, 203 Ariz. at 282, ¶ 13.

**¶6**       Father argues insufficient evidence supported the court's finding that termination is in Child's best interests.  He cites the testimony

of an Indian Child Welfare Act ("ICWA") expert, who stated guardianship would be preferable to termination. Notwithstanding Father's contentions, however, the court heard evidence that Child is adoptable and would benefit from being adopted. The DCS case manager testified Child and his two half-siblings currently are placed with paternal relatives of Child's half-sibling and that the current placement is willing to adopt all three children as a group. She testified Child would benefit from severance, as it would provide him with permanence and stability. Accordingly, sufficient evidence supported the court's determination that termination of Father's rights would be in Child's best interests.

¶7        Father also argues Child is not in an ICWA-compliant placement and, for that reason, it presumptively is not in Child's best interests for Father's rights to be terminated. As discussed below, Father's objection to Child's placement is premature. Once severance has occurred, subsequent placement of an Indian child in accordance with the ICWA preferences presumptively may be in the best interests of the child. *See Navajo Nation v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 339, 345, ¶¶ 18-21 (App. 2012). But the issue of which potential placement best serves the child's interests does not bear on whether termination of the parent's rights is in the child's best interests. Given the reasonable evidence before the superior court, we affirm its finding that termination of Father's rights was in Child's best interests.

## C.        ICWA's Required Finding of Harm.

¶8        ICWA provides that a parent's rights to an Indian child may not be terminated "in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f) (2016). Father argues the superior court erred by finding Child likely would suffer "serious emotional or physical damage" if Father's rights were not terminated.

¶9        We interpret statutes *de novo. State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 9 (2004). "In interpreting a federal statute, our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Steven H. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 566, 570, ¶ 14 (2008) (internal quotation omitted). ICWA is to be interpreted "liberally in favor of the Indians' interest in preserving family units." *Id.*

4

¶10        The superior court heard testimony of an ICWA expert, who, when asked whether continued custody of Child by Father would result in serious emotional or physical damage, replied, "At this time, yes." (After a break, the witness reiterated that statement; she was not asked to elaborate or to clarify what she meant by "at this time.") The superior court also heard evidence that contradicted Father's contention that he had sought to maintain contact with Child. The DCS case manager testified she knew of no phone calls, visits or letters between Father and Child, and that to her knowledge, Child had no memory of Father, nor any kind of relationship with him. Father's testimony confirmed that due to his incarcerations, he had been available to parent Child for only eight months out of Child's life. Father also admitted that while he is incarcerated, he is unable to meet Child's needs and had not provided any financial support to Child since his most recent incarceration began.

¶11        Father also admitted he had assaulted Mother in Child's presence (that crime resulted in his 2010 incarceration). Father also invoked his Fifth Amendment right against self-incrimination when asked whether he was facing charges for assaulting a correction officer during his current incarceration, and the court took a negative inference from his silence. Father testified that he would not be released from prison until 2023 at the earliest, when Child would be 13 years old.

¶12        On appeal, Father argues the ICWA expert testified that, based on Navajo culture, she did not agree that Father's rights should be terminated and instead suggested guardianship would be more appropriate. Although the ICWA expert expressed misgivings about termination, there was reasonable evidence supporting the court's finding that continued custody by Father would result in harm to Child. "ICWA does not require that the experts' testimony provide the sole basis for the court's conclusion; ICWA simply requires that the testimony support that conclusion." *Brenda O. v. Ariz. Dep't of Econ. Sec.*, 226 Ariz. 137, 142, ¶ 23 (App. 2010) (quoting *E.A. v. State Div. of Family & Youth Servs.*, 46 P.3d 986, 992 (Alaska 2002)).

¶13        Based on the evidence presented, the superior court did not err in finding that Child could be harmed if Father's custody of Child were to continue. As the superior court noted, Child would have to remain in foster care, "languishing" until Father's release and, upon his release, would risk "further disruption." As such, there was reasonable evidence supporting the court's finding that Father's continued custody would result in serious emotional or physical damage to Child.

## D.    Preferred Placement Under ICWA.

**¶14**    Father also argues the superior court erred in finding that Child was in an ICWA-compliant placement. *See* 25 U.S.C. § 1915(a), (b) (2016). Because a termination of parental rights does not include an order for placement, Father's argument is premature. After a termination proceeding involving an Indian child concludes, the superior court decides whether the post-severance placement is ICWA-compliant. The court's determination regarding the termination of parental rights "is separate from and preliminary to its determination of placement after severance." *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370-71, ¶ 2 (App. 2009).

**¶15**    Further, once a parent's rights have been terminated, he or she no longer has standing to assert a claim concerning the child's interests. *See* A.R.S. § 8-539 (2016) ("An order terminating the parent-child relationship shall divest the parent and the child of all legal rights, privileges, duties and obligations[.]"); *Sands v. Sands*, 157 Ariz. 322, 324 (App. 1988) ("[O]nce the order of severance was issued, the father's standing as a parent terminated."). Because the superior court did not err in terminating Father's rights, Father lacks standing to challenge the appropriateness of Child's placement.

## CONCLUSION

**¶16**    Because sufficient evidence supported the superior court's order terminating Father's parental rights, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama