COLORADO COURT OF APPEALS                                    2017COA38

Court of Appeals No. 16CA1222
City and County of Denver Juvenile Court No. 16JV510
Honorable D. Brett Woods, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of L.L., a Child,

and Concerning A.T.,

Respondent-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FURMAN
Terry and Plank*, JJ., concur

Announced March 23, 2017

Cristal D. Torres, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney,
Denver, Colorado, for Petitioner-Appellee

Debra W. Dodd, Greeley, Colorado, for Respondent-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1     In this dependency and neglect case, mother, A.T., told the juvenile court at a shelter hearing that she had possible Apache Native American ancestry.  But, for reasons not disclosed in the record, the parties and the juvenile court did not follow certain procedures mandated by the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963 (2012); *see* § 19-1-126, C.R.S. 2016.  Following a jury verdict, the court adjudicated the child, L.L., dependent and neglected.  The court then held a dispositional hearing.

¶ 2     On appeal, mother contends that we should reverse the adjudicatory judgment for two reasons: (1) the Denver Department of Human Services (Department) did not comply with the ICWA notice requirements; and (2) the juvenile court violated ICWA by not requiring the jury to base its findings on a heightened clear and convincing evidentiary standard.  We agree with mother that the Department did not comply with the ICWA notice requirements.  But, we disagree that ICWA imposes a heightened evidentiary standard at the adjudicatory hearing.  Thus, we reverse the judgment and remand the case with directions that notice be given in accordance with ICWA.

## I. Mother's Alleged Apache Heritage

¶ 3    A truancy court magistrate ordered the Department to investigate this case based on mother refusing to take her son, L.L., to school.  A recording from a cell phone showed L.L. cowering in a corner of a bedroom, while mother yelled and threatened to beat him with a belt.  The Department subsequently filed a petition in dependency and neglect, which alleged mother had refused to cooperate with a Denver Police welfare check.  She told the authorities that L.L. was staying with family in Rifle, Colorado, but would not provide an address, and that she had bipolar disorder, but had not been taking her medications.

¶ 4    At a shelter hearing, mother denied the allegations in the petition and requested a jury trial.  She also stated that she had Apache heritage, although she did not subsequently fill out an ICWA assessment form.  The Bureau of Indian Affairs (BIA) lists eight Apache Tribes on its website, https://perma.cc/MHN5-B3F7: Jicarilla Apache Nation, Mescalero Apache Tribe, San Carlos Apache Tribe, Tonto Apache Tribe of Arizona, White Mountain Apache Tribe of the Fort Apache Reservation, Yavapai-Apache Nation of the Camp Verde Indian Reservation, Fort Sill Apache Tribe

of Oklahoma, and Apache Tribe of Oklahoma.  Two months later, mother filed written information that included tribal card numbers and roll numbers.

¶ 5	Even so, the Department did not send notice of the proceedings to any of the Apache Tribes.

¶ 6	At a pretrial hearing, mother again stated that she had Indian heritage.  But, at that hearing, the juvenile court did not address whether the Department used due diligence to identify and work with an Apache Tribe to verify whether L.L. is a member or is eligible for membership.  And, the court did not treat L.L. as an Indian child pending the Tribes' verification.

¶ 7	On the first day of the adjudicatory hearing, the juvenile court instructed the jury that the Department had the burden of proving the allegations set forth in the petition by a preponderance of the evidence.  The court did not address whether ICWA applied.  Mother did not object to the court's preponderance instruction.

¶ 8	Based on the jury's verdict, the juvenile court adjudicated L.L. dependent and neglected.

## II.  The Application of ICWA

¶ 9    The positions of the parties before the juvenile court demonstrate significant confusion about the application of ICWA and the practices to be followed in implementing it.  For example:

- At the shelter hearing, the Department acknowledged that it would send notices.  But, at a pretrial hearing, the Department did not indicate whether notices to any Apache Tribes had been sent.  In the end, the Department did not send notice to any Apache Tribe, and concedes so on appeal.

- L.L.'s guardian ad litem (GAL) voiced no position regarding ICWA's applicability to this case, and does not assert any position on appeal.

- Mother did not state that she was enrolled in an Apache Tribe or that L.L. was eligible for membership.  Rather, she asserted that her great grandmother was "an Apache out of Nebraska"; she had "the bloodline"; and she "was able to continue with the enrollment process."

¶ 10    To address the application of ICWA to this case, we first discuss Congress's purpose in enacting ICWA.  We then discuss the

4

roles of the juvenile court and the parties in determining whether a child is an "Indian child" under ICWA. We conclude by addressing mother's two arguments on appeal that: (1) the Department did not comply with ICWA's notice requirements; and (2) ICWA imposes a heightened evidentiary standard at the adjudicatory hearing.

## A. Congress's Purpose in Enacting ICWA

¶ 11 Congress enacted ICWA "for the protection and preservation of Indian tribes and their resources." 25 U.S.C. § 1901(2) (2012). Congress found "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." 25 U.S.C. § 1901(4). Congress also found that States have often "failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C. § 1901(5).

¶ 12 To address this failure, ICWA establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which

5

will reflect the unique values of Indian culture." 25 U.S.C. § 1902 (2012). In other words, ICWA establishes minimum federal standards for an "Indian child" involved in a "child custody proceeding." 25 U.S.C. § 1903(1),(4) (2012).

¶ 13 Of course, ICWA does not apply to every child-custody proceeding. Hence, in any such proceeding, the parties and juvenile court must ask two fundamental questions to determine whether ICWA applies to a case: (1) Does ICWA apply to this child? (2) Does ICWA apply to the proceeding? *See* Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act 9 (Dec. 2016), https://perma.cc/3TCH-8HQM (2016 Guidelines).

### B. The Juvenile Court and the Parties' Role

¶ 14 The juvenile court and the parties each play an important role in determining whether ICWA applies to a child who is subject to a custody proceeding.

¶ 15 On appeal, the Department cites the 2015 Guidelines for State Courts and Agencies in Indian Child Custody Proceedings (2015 Guidelines) and 2016 Department of the Interior Final Rule (2016 Final Rule) as guidance to State courts related to inquiry and verification issues in Indian Child Welfare Act proceedings. *See*

6

Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778 (June 14, 2016) (to be codified at 25 C.F.R. pt. 23); Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146 (Feb. 25, 2015). In 2016, the BIA published new guidelines intended "to assist those involved in child custody proceedings in understanding and uniformly applying" ICWA. 2016 Guidelines at 4, 6. The 2016 Guidelines repeal the 2015 Guidelines and incorporate the 2016 Final Rule. *Id.* The 2016 Guidelines thus clarify the practices of courts and parties involved in child custody proceedings to ensure compliance with ICWA, and the Department appears to concede their value in doing so.

¶ 16 Although the 2016 Guidelines are not binding, we consider them persuasive. *See B.H. v. People in Interest of X.H.*, 138 P.3d 299, 302 n.2 (Colo. 2006) (referring to the 1979 guidelines). Therefore, we look to the 2016 Guidelines for guidance to ensure compliance with ICWA.

¶ 17 In determining whether ICWA applies to a child who is subject to a dependency and neglect proceeding, the juvenile court, the Department, the GAL, and the respondent parent each have various duties. We address them here.

### 1. The Juvenile Court's Duties

¶ 18     The juvenile court's duty is to ask whether the child is an "Indian child," follow certain procedures if it has reason to know a child is an Indian child, and, if the child is not an Indian child, instruct the parties to inform the court if they later receive information that provides reason to know the child is an Indian child. 25 C.F.R. § 23.107 (2016).

### a. Initial Inquiry

¶ 19     The juvenile court must first ask each participant on the record at the commencement of every emergency, voluntary, or involuntary child-custody proceeding "whether the participant knows or has reason to know that the child is an Indian child." 25 C.F.R. § 23.107(a); *see* § 19-1-126(2) (When the petition "does not disclose whether the child" is an Indian child, "the court shall inquire of the parties at the first hearing whether the child is an Indian child and, if so, whether the parties have complied with the procedural requirements" of ICWA.).

¶ 20     An "Indian child" means "any unmarried person who is under the age of eighteen and is either: (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological

child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4); *see* 19-1-103(65.3), C.R.S. 2016. Tribal membership for purposes of ICWA is left up to the individual Tribes. *B.H.*, 138 P.3d at 303.

### b. Reason to Know

¶ 21    The juvenile court also has certain duties if it has "reason to know" that a child is an Indian child. 25 C.F.R. § 23.107. The juvenile court has "reason to know" that a child is an Indian child based on any of the following:

> (1) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child;
>
> (2) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;
>
> (3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;
>
> (4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;
>
> (5) The court is informed that the child is or has been a ward of a Tribal court; or

> (6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe.

25 C.F.R. § 23.107(c).

¶ 22      The supreme court has determined that the information indicating that a child is an Indian child is based on the "totality of the circumstances" and includes "consideration of not only the nature and specificity of available information but also the credibility of the source of that information and the basis of the source's knowledge." *B.H.*, 138 P.3d at 303. But, the supreme court cautioned that "the threshold requirement for notice was clearly not intended to be high." *Id.*; *see* 25 C.F.R. § 23.106(b) (2016) ("[W]here applicable State . . . law provides a higher standard of protection to the rights of the parent or Indian custodian than the protection accorded under the Act, ICWA requires the State . . . to apply the higher State . . . standard.").

¶ 23      Thus, based on a totality of the circumstances, if there is "reason to know" the child is an Indian child, but the juvenile court does not have sufficient evidence to determine whether the child is or is not an "Indian child," the court must do several things. 25 C.F.R. § 23.107.

¶ 24    First, the juvenile court must ensure that the Department sends notice to any identified Indian Tribe.  That is, when the juvenile court knows or has reason to know that the subject of an involuntary foster-care-placement or termination-of-parental-rights proceeding is an Indian child, the court must ensure that the following occurs:

> (1) The party seeking placement promptly sends notice of each such child-custody proceeding (including, but not limited to, any foster-care placement or any termination of parental or custodial rights) . . . ; and
>
> (2) An original or a copy of each notice sent . . . is filed with the court together with any return receipts or other proof of service.

25 C.F.R. § 23.111(a) (2016).

¶ 25    The court must then "[c]onfirm, by way of a report, declaration, or testimony included in the record" that the department used due diligence to

> identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership) [and] to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership)[.]

25 C.F.R. § 23.107(b)(1); *see* § 19-1-126(2).

11

¶ 26    Second, the court must "[t]reat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition of an 'Indian child.'" 25 C.F.R. § 23.107(b)(2).

c.  Subsequent Information if Not an Indian Child

¶ 27    If the child is not an Indian child, the juvenile court must "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." 25 C.F.R. § 23.107(a).

> The rule does not require an inquiry at each hearing within a proceeding; but, if a new child-custody proceeding (such as a proceeding to terminate parental rights or for adoption) is initiated for the same child, the court must make a finding as to whether there is "reason to know" that the child is an Indian child. In situations in which the child was not identified as an Indian child in the prior proceeding, the court has a continuing duty to inquire whether the child is an Indian child.

2016 Guidelines at 11.

¶ 28    Accordingly, the juvenile court plays an important role in determining whether ICWA applies to a child subject to a custody proceeding by inquiring as to whether the participants know or have reason to know that the child is an "Indian child" and

12

ensuring that notice is sent to those Tribes of which there is reason to know the child is a member or eligible for membership.

## 2.  The Department's Duties

¶ 29    The Department's duties are to investigate whether the child is an "Indian child," provide notice to any identified Indian Tribes, and confirm that it used due diligence to identify and work with any Tribes of which there is reason to know that the child may be a member or eligible for membership.

## a.  Initial Inquiry

¶ 30    The Department's first duty is to determine whether the child is an Indian child "as soon as possible" and investigate "into a child's status early in the case."  2016 Guidelines at 11; *see* 25 C.F.R. § 23.107(b)(1).  This inquiry should occur before any court hearing.

¶ 31    If the Department learns of a possible tribal affiliation, the Department should "ask the child, parents, and potentially extended family which Tribe(s) they have an affiliation with and obtain genealogical information from the family, and contact the Tribe(s) with that information."  *See* 2016 Guidelines at 11; *see* 25 C.F.R. § 23.107(b)(1).  If a child or parent is not certain of his or her

membership status in a Tribe but indicates that he or she is somehow affiliated with a Tribe or group of Tribes, the Department should "ask the parent and, potentially, extended family what Tribe or Tribal ancestral group the parent may be affiliated with." 2016 Guidelines at 18.

¶ 32     Likewise, Colorado's ICWA statute provides that the Department should make continuing inquiries to determine whether the child is an Indian child, and, if so, take certain steps to determine the identity of the Indian child's Tribe. § 19-1-126(1)(a). To fulfill this duty, the Department in this case sought to have mother fill out an ICWA assessment form.

### b. Providing Notice

¶ 33     The Department's next duty is to send notice to any identified Indian Tribes. The ICWA notice requirements are one of ICWA's core procedural requirements in a child-custody proceeding because they give the parent, Indian custodian, and Tribe the opportunity to respond to any allegations in the case, to intervene, or to seek transfer of jurisdiction to the Tribe. 25 C.F.R. § 23.111; *see* 2016 Guidelines at 30-35.

¶ 34    Where there is reason to know that an Indian child is involved, and where the identity and location of the Tribe is known, federal regulations require the Department to directly notify the Tribe by registered or certified mail with return receipt requested of the pending child-custody proceedings and its right to intervene.  25 C.F.R. § 23.111(a).

> Notice must be sent to:
>  (1) Each Tribe where the child may be a member (or eligible for membership if a biological parent is a member) . . .;
>  (2) The child's parents; and
>  (3) If applicable, the child's Indian custodian.

25 C.F.R. § 23.111(b).

¶ 35    Section 19-1-126(1)(b), which differs slightly from the federal regulations with regard to permitted methods of notice, requires the Department to send notice as follows:

> by registered mail, return receipt requested, to the parent or Indian custodian of such child, to the tribal agent of the Indian child's tribe as designated in title 25 of the code of federal regulations, part 23, or, if such agent has not been designated, to the highest-elected or highest-appointed official of the Indian child's tribe, to the highest-elected or highest-appointed tribal judge of the Indian child's tribe, and to the social service department of the Indian child's tribe.

Colorado's regulations also require the Department to provide notice in involuntary placements by telephone within forty-eight hours. Dep't of Human Servs. Reg. 7.309.32(A), 12 Code Colo. Regs. § 2509-4.

¶ 36 Because ICWA applies only if the Tribe is a federally recognized Indian Tribe, the Department can so confirm on the BIA's annual list. 2016 Guidelines at 18. If only the tribal ancestral group is indicated, it is recommended that the Department contact each of the Tribes in the group to identify whether the parent or child is a member. *Id.*

¶ 37 The Department should try to provide sufficient information to the Tribe for the Tribe to make the determination as to whether the child is a member or eligible for membership. *Id.* at 21. To this end, the notice should include the following:

> (1) The child's name, birthdate, and birthplace;
> (2) All names known (including maiden, married, and former names or aliases) of the parents, the parents' birthdates and birthplaces, and Tribal enrollment numbers if known;
> (3) If known, the names, birthdates, birthplaces, and Tribal enrollment information of other direct lineal ancestors of the child, such as grandparents; [and]

(4) The name of each Indian Tribe in which the child is a member (or may be eligible for membership if a biological parent is a member)[.]

25 C.F.R. § 23.111(d).

¶ 38 The notice must also include a copy of the petition, complaint, or other document by which the child-custody proceeding was initiated and, if a hearing has been scheduled, information on the date, time, and location of the hearing, and various statements related to the Tribe's right to intervene and petition for a transfer. 25 C.F.R. § 23.111(d)(5)-(6); § 19-1-126(1)(c).

¶ 39 If a Tribe does not respond to the notice, or responds that it is not interested in participating in the proceeding, the Department must continue to send the Tribe notices of subsequent proceedings for which notice is required, such as a termination of parental rights proceeding. 2016 Guidelines at 38; *see* 25 C.F.R. § 23.111. The Department is also encouraged to follow up telephonically. 2016 Guidelines at 38.

### c. Confirmation

¶ 40 The Department's third duty is to confirm that it used due diligence to identify and work with any Tribes of which there is

reason to know that the child may be a member or eligible for membership.  25 C.F.R. § 23.107(b)(1); *see also* 2016 Guidelines at 9.  This due diligence requirement applies to all cases filed on or after December 12, 2016.  2016 Guidelines at 4.

¶ 41     To do so, the Department must file with the juvenile court an original or copy of each notice sent together with any return receipts or other proof of service.  25 C.F.R. § 23.111(a)(2); § 19-1-126(1)(c).  The Department should document its verbal and written requests to a Tribe to obtain information or verification of a child or parent's tribal membership or eligibility for membership and provide this information to the court.  2016 Guidelines at 22.  The Department must also inform the court if it subsequently discovers that the child is an Indian child "so that the proceeding can move forward in compliance with the requirements of ICWA."  *Id.* at 11; *see* 25 C.F.R. § 23.107(a).

3.  The GAL's Duties

¶ 42     The GAL's duty is to represent the best interests of a child.  § 19-3-203(3), C.R.S. 2016.

18

¶ 43 The 2016 Guidelines point out that ICWA is not in tension with what is in the "best interests of the child." 2016 Guidelines at 89. Indeed, ICWA protects the best interests of Indian children by:

- ensuring that, if possible, children remain with their parents;

- supporting reunification;

- favoring placements within a child's extended family and tribal community;

- providing sufficient notice about child-custody proceedings to a Tribe; and

- enabling a Tribe to fully participate in the proceeding.

*See id.*

¶ 44 Accordingly, the GAL plays an important role in ensuring ICWA's application to an Indian child subject to a child-custody proceeding by supporting the relationship between a child and his or her parents, extended family, and Tribe. *See id.* Ensuring compliance with ICWA also helps to prevent unnecessary delay occasioned by appellate reversals and remands for noncompliance.

### 4. Respondent Parent Duties

¶ 45 The respondent parent's duty is to disclose any information indicating that the child may be an Indian child or to provide an

identification card indicating membership in a Tribe to the Department or juvenile court in a timely manner. *Id.* at 10-11. Lack of timely information may generate unnecessary delays, create instability in placements for the Indian child, and deny ICWA protections to Indian children and their families. *Id.* at 11.

### C. Mother's Argument on Appeal

¶ 46 Whether the ICWA notice provisions were satisfied is a question of law that we review de novo. *People in Interest of T.M.W.*, 208 P.3d 272, 274 (Colo. App. 2009).

¶ 47 Although mother did not state that L.L. was a member of a Tribe, or that she was a member of a Tribe and L.L. was eligible for membership in a Tribe, the Department nonetheless concedes that, based on mother's assertion of Native American heritage and existing case law, notice should have been sent to the eight federally recognized Apache Tribes. *See B.H.*, 138 P.3d at 303.

¶ 48 Because protection of tribal interests is at the core of ICWA, the failure of mother to provide complete and accurate information about her Native American heritage (e.g., the precise location of the Tribe, a completed ICWA assessment form, or written information with tribal card numbers and roll numbers that included the name

20

of the Tribe) did not absolve the Department of its obligation to provide notice to the Apache Tribes. *See People in the Interest of J.O.*, 170 P.3d 840, 843 (Colo. App. 2007).

¶ 49 And, despite L.L. being placed in foster care, the juvenile court did not address ICWA until a later pretrial hearing, when it noted that ICWA was an issue in the case. Even then, the court did not address whether the Department had sought to identify and work with the Apache Tribes to verify whether L.L. is a member or eligible for membership. *See B.H.*, 138 P.3d at 303. This was error that must be corrected so that notice can be given in accordance with ICWA.

### III. Burden of Proof

¶ 50 At the adjudicatory hearing, the State must prove the allegations in the petition by a preponderance of the evidence. §§ 19-3-505(1), (6), (7)(a), C.R.S. 2016; *People in Interest of A.M.D.*, 648 P.2d 625, 640 (Colo. 1982).

¶ 51 ICWA concerns the placement of Indian children in child-custody proceedings. *See J.O.*, 170 P.3d at 842. But an adjudicatory hearing is not a child-custody proceeding. *See People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009) ("The

purpose of an adjudicatory hearing is to determine whether . . . the status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship.") (citation omitted).  It follows then that the language in Colorado's ICWA statute does not specifically set forth any different standard of proof for an adjudicatory hearing.  *See* § 19-1-126.

¶ 52    Likewise, the federal ICWA statute is silent as to the particular standard of proof required for an adjudicatory hearing.  *See, e.g.*, 25 U.S.C. § 1912(e), (f) (2012) (the State must submit proof by clear and convincing evidence when seeking foster care placement, and proof beyond a reasonable doubt when seeking termination of parental rights); 25 C.F.R. § 23.121 (2016).

¶ 53    Because there is no language in ICWA or in its associated rules or guidelines that indicates a heightened burden of proof for the adjudicatory hearing in a dependency and neglect proceeding, the State is only required to prove the allegations set forth in the petition by a preponderance of the evidence in all adjudications, whether Indian or non-Indian children.  *See In re Interest of Emma J.*, 782 N.W.2d 330, 336-37 (Neb. Ct. App. 2010).

¶ 54    Therefore, we disagree with mother's contention that ICWA imposes a heightened evidentiary standard, and we conclude that the juvenile court did not err when it instructed the jury regarding the Department's burden of proof.

## IV.  Conclusion

¶ 55    The adjudicatory judgment is reversed, and the case is remanded with directions to the juvenile court to ensure that the Department provides notice to the federally recognized Apache Tribes in accordance with ICWA.

¶ 56    On remand, if each of the Apache Tribes determines L.L. is not a member or eligible for membership, and thus there is not a reason to know the child is an Indian child, the juvenile court must make this finding on the record.  *See* 2016 Guidelines at 12.  If that finding is made, the juvenile court must instruct the parties to promptly inform it if they subsequently receive information that provides reason to know the child is an Indian child.  *Id.* at 11.  In that case, because mother does not appeal on any other grounds, the adjudicatory judgment shall be reinstated and will stand affirmed subject to mother's right to appeal this finding.  *See J.O.,* 170 P.3d at 844.

But, if a Tribe determines that L.L. is a member of or eligible for membership in the Tribe, the judgment is reversed and the juvenile court must proceed in accordance with ICWA. *See* 25 U.S.C. § 1912(d); *J.O.,* 170 P.3d at 844.

JUDGE TERRY and JUDGE PLANK concur.