Opinion by JUDGE BOORAS
¶ 1 In this proceeding governed by the Indian Child Welfare Act of 1978 (ICWA), A.C. (mother) appeals the trial court's judgment terminating her parent-child legal relationship with D.B. (the child). We decide *48 whether an expert must expressly opine as to whether the child is likely to suffer serious emotional or physical damage in the parent's care to satisfy a required ICWA statutory finding. Because we conclude that expert testimony does not need to recite the specific statutory language, we affirm the judgment.
I. The Dependency and Neglect Case
¶ 2 In July 2015, the Department of Human Services of the City and County of Denver (Department) initiated a dependency and neglect proceeding and assumed temporary custody of the child after he tested positive for marijuana at birth. Because mother and M.B. (father) each reported that they were members of the Navajo Nation and believed the child was eligible for membership, the Department sent notice of the proceeding to the Navajo Nation.
¶ 3 Less than a month later, the court adjudicated the child dependent and neglected and adopted a treatment plan for mother. It also returned custody of the child to the parents.
¶ 4 However, in early September 2015, mother left the child with an acquaintance while she went to a casino. When she returned, she had to be taken to detox and could not remember with whom she had left the child. After the Department located the child, the court again placed the child in the Department's custody.
¶ 5 Three months later, the Navajo Nation verified that the child was eligible for enrollment and began participating in the case.
¶ 6 The Department subsequently moved to terminate the parent-child legal relationship between mother and the child. Following a hearing in October 2016, the trial court found, among other things, that continued custody of the child by one of the parents would likely result in serious emotional or physical damage to the child due to the parents' extensive substance abuse, extensive domestic violence, lack of housing, and lack of income to meet the child's needs. Consequently, it terminated mother's parental rights.
II. Termination of Parental Rights
¶ 7 Mother contends that the trial court erred in terminating her parental rights in the absence of testimony from a qualified expert witness that continued custody of the child by mother would likely result in serious emotional or physical damage to the child as required by 25 U.S.C. § 1912(f) (2012). We disagree.
A. Preservation
¶ 8 Initially, the Department and guardian ad litem (GAL) assert that we should decline to address this issue because mother failed to raise it in the trial court. Generally in civil cases-including dependency and neglect actions-an appellate court will consider only issues that were raised in the trial court. However, ICWA provides that "any parent ... may petition any court of competent jurisdiction to invalidate [an action for termination of rights to an Indian child] upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of [ICWA]." 25 U.S.C. § 1914 (2012) ; see People in Interest of J.O. , 170 P.3d 840, 841 (Colo. App. 2007) ; People in Interest of S.R.M. , 153 P.3d 438, 441 (Colo. App. 2006). A court of competent jurisdiction includes an appeals court. In re K.B. , 370 Mont. 254, 301 P.3d 836, 840 (2013).
¶ 9 Accordingly, we will address mother's argument. See Dep't of Human Servs. v. J.G. , 260 Or.App. 500, 317 P.3d 936, 944 (2014) (holding that a state rule that precludes a party from using 25 U.S.C. § 1914 on appeal to assert a right under § 1912(d) stands as an obstacle to fully implementing ICWA).
B. Standard of Review
¶ 10 The interpretation of ICWA is a question of law that we review de novo. See People in Interest of A.R. , 2012 COA 195M, ¶ 17, 310 P.3d 1007. Statutes enacted for the benefit of Indians, as well as regulations, guidelines, and state statutes promulgated for their implementation, must be liberally construed in favor of Indian interests. Id. at ¶ 18 ; see also Montana v. Blackfeet Tribe of Indians , 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985).
*49 ¶ 11 Whether a child is likely to suffer serious emotional or physical damage from a parent's continued custody is a mixed question of fact and law. See A.R. , ¶ 19 (concluding that whether a department made adequate active efforts under 25 U.S.C. § 1912(d) and whether to deviate from ICWA's placement preferences were mixed questions of facts and law). We accept the trial court's factual findings unless clearly erroneous and its legal conclusions de novo. People in Interest of A.J.L. , 243 P.3d 244, 249 (Colo. 2010).
C. ICWA's Requirement
¶ 12 In order to protect Indian tribes and children, ICWA establishes minimal federal standards for child custody proceedings. 25 U.S.C. § 1902 (2012) ; see People in Interest of L.L. , 2017 COA 38, ¶ 12, 395 P.3d 1209. Such proceedings include any action that results in the termination of parental rights to an Indian child. 25 U.S.C. § 1903(1)(ii) (2012) ; B.H. v. People in Interest of X.H. , 138 P.3d 299, 302 (Colo. 2006).
¶ 13 ICWA provides that a court may not terminate parental rights "in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f) ; see People in Interest of A.N.W. , 976 P.2d 365, 368 (Colo. App. 1999).
¶ 14 This provision contains two separate requirements. First, it requires the trial court to determine that there is proof beyond a reasonable doubt that the child is likely to suffer serious emotional or physical damage if the child remains in the parent's care. 25 U.S.C. § 1912(f). Second, the trial court's determination must be supported by evidence that includes testimony from qualified expert witnesses. Id.
¶ 15 But, contrary to mother's assertion, the statute does not mandate that an expert witness specifically opine that the child is likely to suffer emotional or physical damage in the parent's custody. People in Interest of A.B. , 880 N.W.2d 95, 104 (S.D. 2016) ; see also Marcia V. v. State , 201 P.3d 496, 508 (Alaska 2009) (concluding that the trial judge, not the expert witness, must find the likelihood of serious emotional or physical damage to the child).
¶ 16 Nor does 25 U.S.C. § 1912(f) require that the expert testimony provide the sole basis for the trial court's conclusion. Marcia V. , 201 P.3d at 508 ; see also Steven H. v. Ariz. Dep't of Econ. Sec. , 218 Ariz. 566, 190 P.3d 180, 185 (2008) (applying the same conclusion to 25 U.S.C. § 1912(e), which imposes the same requirement for foster care placement as § 1912(f) does for termination). Rather, the expert testimony must constitute some of the evidence that supports the court's finding of the likelihood of serious emotional or physical damage to the child. Marcia V. , 201 P.3d at 508 ; Steven H. , 190 P.3d at 186.
¶ 17 We recognize that two courts appear to have reached the opposite conclusion. The Montana Supreme Court has held that the failure to elicit expert testimony regarding whether continued custody will result in serious emotional or physical damage to the children required reversal of a termination order. K.B. , 301 P.3d at 839 (expert testified only that placement with mother was "likely to result in immediate risk of harm to the children"). Likewise, the Michigan Court of Appeals observed that a trial court's beyond a reasonable doubt finding must be supported by testimony of a qualified expert witness who opines that continued custody of the Indian child by the parent will likely result in serious physical or emotional harm to the child. In re Payne/Pumphrey/Fortson , 311 Mich.App. 49, 874 N.W.2d 205, 211 (2015) (only expert who testified at the termination hearing did not support termination and testified that returning children to parent's care "would not likely result in serious emotional or physical damage to either child").
¶ 18 To the extent that these cases can be read as requiring specific testimony using the language of the statute, we disagree with them because such a requirement would effectively delegate the termination decision to a qualified expert witness. Indeed, under this approach, the trial court would be precluded from terminating parental rights to an Indian *50 child unless the expert offered an opinion tracking the statutory language of 25 U.S.C. § 1912(f).
¶ 19 Congress's primary reason for requiring qualified expert testimony was to prevent courts from basing decisions "solely upon the testimony of social workers who possessed neither the specialized professional education nor the familiarity with Native [American] culture necessary to distinguish between cultural variations in child-rearing practices and actual abuse or neglect." Steven H. , 190 P.3d at 185 (quoting L.G. v. State , 14 P.3d 946, 952-53 (Alaska 2000) ). This purpose would not necessarily be furthered by a requirement that an expert witness recite the precise language of 25 U.S.C. § 1912(f).
¶ 20 Finally, we turn to the Bureau of Indian Affairs guidelines and rule interpreting 25 U.S.C. § 1912(f). Although the 2015 guidelines were in effect during this proceeding, they have been replaced by the 2016 guidelines and rule. L.L. , ¶ 15. Because the 2016 guidelines and rule are persuasive, we look to them for guidance. Id. at ¶ 16. Under the guidelines and rule, a qualified expert witness must be qualified to testify regarding whether the child's continued custody by the parent is likely to result in serious emotional or physical damage to the child and should be qualified to testify as to the prevailing social and cultural standards of the Indian child's tribe. 25 C.F.R. § 23.122(a) (2017) ; Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act, 53-55 (Dec. 2016), https://perma.cc/3TCH-8HQM (2016 Guidelines). Separate expert witnesses may be used to testify regarding potential emotional and physical damage to the child and the tribe's prevailing social and cultural standards. 2016 Guidelines at 53-55. Although these provisions emphasize the need for a qualified expert witness to offer testimony supporting a finding regarding likely damage to the child, they stop short of demanding a verbatim recitation of the statutory standard by the expert.
¶ 21 For these reasons, we are not persuaded that ICWA requires a qualified expert witness to recite the specific language of 25 U.S.C. § 1912(f) or express his or her testimony in a particular way.
D. Sufficiency of Evidence
¶ 22 Having reached this conclusion, we must next determine whether the record supports the trial court's determination, by proof beyond a reasonable doubt, that the child would likely suffer serious emotional or physical damage if placed in mother's care. We conclude that it does.
¶ 23 The ongoing caseworker testified that mother's abuse of alcohol, cocaine, and marijuana posed a safety concern to the child. Although mother attended inpatient substance abuse treatment for about three months, she left the program in June 2016 without successfully completing treatment. And, she did not want to reengage in other treatment as she "felt that she could remain sober on her own."
¶ 24 The caseworker had also made a referral for mother to participate in domestic violence treatment because mother had been assaulted by father on numerous occasions. But, mother had not followed through with the referral. The caseworker explained that the child could suffer emotional and possible physical abuse if he was present during a domestic violence incident between mother and father.
¶ 25 The record further reveals that mother was homeless and had declined a one-bedroom apartment that was offered to her because she "didn't like the location of it and would rather be on the street with her group than somewhere that she didn't want to be located."
¶ 26 Mother interacted well with the child during visits, but she struggled to understand the child's special needs. For example, the child had a severe allergy to milk products that had caused his body to stop absorbing nutrients. Yet, mother brought food that contained milk products to visits. She also missed multiple visits and left visits early when she became upset. Consequently, the caseworker opined that mother was unable to parent the child independently.
¶ 27 Additionally, the Department presented testimony from a qualified expert witness under ICWA-a social worker with Navajo *51 Children and Family Services. The social worker did not directly opine that the child would suffer damage in mother's care. Rather, when asked to give her opinion regarding whether the child would suffer serious emotional or physical harm if returned to a parent, the social worker indicated that mother had not fulfilled the treatment requirements to address the reasons for the child being placed in the Department's custody. The social worker also testified that the recent domestic violence issues between the parents were concerning.
¶ 28 Under these circumstances, the record, as a whole, contains sufficient evidence, including the testimony of a qualified expert witness, to support the trial court's determination that the child would likely suffer serious emotional or physical damage if placed in mother's care.
III. Hearsay Evidence
¶ 29 Mother contends that the trial court erred in relying on inadmissible hearsay statements in the termination report to conclude that she had failed to maintain sobriety, and thus, that the child would likely suffer serious emotional or physical damage if he remained in mother's custody. We conclude that the error, if any, was harmless.
¶ 30 To begin, the GAL argues that this issue was not preserved for review. We reject this argument for two reasons. First, mother objected to the admission of the hearsay statements in the termination report. Second, mother challenges the trial court's findings, and a party is not required to object to the trial court's findings in the trial court to preserve a challenge to those findings. See C.R.C.P. 52. Thus, we conclude that the issue was not forfeited by failure to object to the admission of the evidence.
¶ 31 Generally, error in a civil case is harmless if it did not affect a substantial right of a party. C.R.C.P. 61 ; People in Interest of R.D. , 2012 COA 35, ¶ 25, 277 P.3d 889. An error affects a substantial right if it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself. Bly v. Story , 241 P.3d 529, 535 (Colo. 2010).
¶ 32 Here, the trial court admitted the termination report over mother's objection that the report contained hearsay. In admitting the report, the court explained it would not consider the hearsay statements for the truth of the matter asserted. Rather, it would consider them for the caseworker's "basis for making her recommendations." A statement that is not offered for the truth of the matter asserted is not hearsay. See People v. Taylor , 74 P.3d 396, 400 (Colo. App. 2002).
¶ 33 Indeed, mother does not challenge the trial court's admission of the report for this limited purpose. Instead, she asserts that the court erred in relying on the hearsay statements in the report to find that she had failed to maintain sobriety.
¶ 34 To be sure, the termination report includes statements regarding mother's continued substance use. It indicates that a victim advocate reported that mother and father were drunk during a domestic violence incident in August 2016. And, the trial court cited mother's failure to maintain sobriety as a reason for its determination that the child would likely suffer damage if in mother's care. Mother contends that the trial court must have relied on the truth of the statements in the report because the report was "the only evidence" in the case that mother did not maintain sobriety after leaving inpatient treatment in June 2016.
¶ 35 However, contrary to mother's contention, other evidence in the record shows that mother did not demonstrate sobriety after leaving inpatient treatment in June 2016. After leaving treatment, mother told the caseworker that she did not want to take urinalyses or participate in substance abuse treatment. The caseworker also testified, without objection, that there were still concerns about mother's substance abuse based on information that mother was intoxicated during a recent domestic violence incident. Thus, the record does not clearly demonstrate that the trial court relied on the statements in the report for the truth of the matter asserted.
*52 ¶ 36 In any event, substance abuse was not the sole basis for the trial court's determination that the child would likely suffer damage in mother's care. The court also relied on, with record support, the extensive domestic violence between the parents and mother's lack of housing and income to meet the child's needs.
¶ 37 As a result, we discern no reversible error in the trial court's determination that the child would likely suffer serious emotional or physical damage in mother's care.
IV. Conclusion
¶ 38 The judgment is affirmed.
JUDGE GRAHAM and JUDGE DUNN concur.