The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 27, 2019

## 2019COA96

**No. 17CA1482, *In re the Marriage of Stockwell* — Family Law
— Parental Responsibilities; American Indian Law — ICWA —
Placement of Indian Children — Foster Care or Preadoptive
Placements**

In a case concerning the allocation of parental responsibilities
for a child (APR), a division of the court of appeals considers
whether the APR triggered the requirements of the federal Indian
Child Welfare Act of 1978 (ICWA). The division clarifies that (1) a
legal father under Colorado law is not necessarily a "parent" for
purposes of ICWA and (2) an APR to a legal father who does not
qualify as a "parent" under ICWA is a "child custody proceeding"
subject to ICWA.

Because the APR to the legal father here constituted a child
custody proceeding and the district court did not comply with

ICWA, we reverse the order denying the mother's motion to vacate the APR order, and we remand for further proceedings.

Court of Appeals No. 17CA1482
City and County of Denver District Court No. 12DR1367
Honorable Catherine A. Lemon, Judge

In re the Marriage of

Joseph Cody Stockwell,

Appellee,

and

Jennifer Lynn Dees,

Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE NAVARRO
Richman and Welling, JJ., concur

Announced June 27, 2019

Joseph Cody Stockwell, Pro Se

Jennifer Lynn Dees, Pro Se

¶ 1    In this proceeding concerning the allocation of parental responsibilities (APR) for L.D-S., Jennifer Lynn Dees, the child's mother, appeals the district court's order denying her motion to vacate a 2013 order giving majority parenting time to Joseph Cody Stockwell, the child's legal but not biological father.  Dees contends that the court erred because it issued the APR order without first inquiring into the child's possible Indian heritage as required by the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901 to 1963 (2018).  Dees is right.  In agreeing with her, we clarify that (1) a legal father under Colorado law is not necessarily a "parent" for purposes of ICWA and (2) an APR to a legal father who does not qualify as a "parent" under ICWA is a "child custody proceeding" under ICWA.

¶ 2    Because the APR to Stockwell here constituted a child custody proceeding and the court did not comply with ICWA, we reverse the order denying Dees's motion and remand for further proceedings.

I.  Factual and Procedural History

¶ 3    L.D-S. was born during the marriage between Dees and Stockwell.  That marriage has since been dissolved.  Although Stockwell is not L.D-S.'s biological father, he was declared his legal

1

father under the paternity presumption in section 19-4-105(1)(a), C.R.S. 2018.  On October 2013, the district court entered an APR order that named Stockwell the primary residential parent for L.D-S. and limited Dees's parenting time to weekends.  Over the next few years, the court expanded Dees's parenting time to include holidays, school breaks, and two weeks of summer vacation.

¶ 4    In 2015, Dees asked the court to set aside the October 2013 APR order.  She alleged that she had obtained a DNA test result from L.D-S.'s biological father that would rebut Stockwell's paternity presumption.  A magistrate denied her motion, and the district court adopted the magistrate's order.

¶ 5    In 2017, Dees filed a pro se motion titled "Motion for 25 U.S.C. 1914 'ICWA' Violations," arguing that federal law required L.D-S. to be returned to her care (hereinafter, ICWA motion).  She attached to the ICWA motion various orders (including the October 2013 APR order) and a letter asking the district court to invalidate all parenting orders, return L.D-S. to her custody, and comply with ICWA.  She asserted in her letter that L.D-S. was "Choctaw and Wailaki on my side only" and that the APR to Stockwell was a "foster care placement."  The court denied the motion as untimely.

2

## II. ICWA Compliance

### A. Basic Principles

¶ 6    ICWA is intended to protect and preserve Indian tribes and their resources, and to protect Indian children who are members of or are eligible for membership in an Indian tribe. 25 U.S.C. § 1901(2), (3) (2018); *People in Interest of M.V.*, 2018 COA 163, ¶ 10. ICWA recognizes that Indian tribes have a separate interest in Indian children that is equivalent to, but distinct from, parental interests. *M.V.*, ¶ 10. Thus, in a proceeding in which ICWA may apply, tribes must have a meaningful opportunity to participate in determining whether a child who is a subject of the proceeding is an Indian child and to be heard on the issue of the applicability of ICWA. *B.H. v. People in Interest of X.H.*, 138 P.3d 299, 303 (Colo. 2006).

¶ 7    ICWA applies when an Indian child is the subject of a "child custody proceeding," which includes any action that could culminate in "foster care placement." 25 U.S.C. § 1903(1) (2018); 25 C.F.R. § 23.2 (2018); *People in Interest of K.G.*, 2017 COA 153, ¶ 14. An "Indian child" is any unmarried person who is under age eighteen and is either (1) a member of an Indian tribe or (2) eligible

3

for membership in an Indian tribe and is the biological child of a member of an Indian tribe.  25 U.S.C. § 1903(4).  Under ICWA, a tribe is entitled to intervene in child custody proceedings involving its children, and a tribal court is the preferred jurisdiction for such proceedings.  *K.G.*, ¶ 6.

¶ 8     At the start of every emergency, voluntary, or involuntary child custody proceeding, the district court must ask each participant whether he or she knows or has reason to know that the child is an Indian child.  25 C.F.R. § 23.107(a) (2018); *K.G.*, ¶ 21.  All responses should be on the record.  25 C.F.R. § 23.107(a).

¶ 9     It is "critically important" that the court inquire into whether a child is an Indian child because, if an inquiry is not made, "a child-custody proceeding may not comply with ICWA and thus may deny ICWA protections to Indian children and their families." Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act 11 (Dec. 2016), https://perma.cc/3TCH-8HQM; *see also People in Interest of C.A.*, 2017 COA 135, ¶ 17.

¶ 10    If the court has reason to know that the child is an Indian child but has insufficient evidence to make a determination, the court must treat the child as an Indian child unless and until the

4

court determines on the record that the child does not meet the definition of an Indian child. 25 C.F.R. § 23.107(b)(2). A court has reason to know a child is an Indian child if, among other reasons not relevant here, any participant in the proceeding informs the court that (1) the child is an Indian child or (2) the participant has discovered information indicating that the child is an Indian child. 25 C.F.R. § 23.107(c)(1)-(2); *People in Interest of L.L.*, 2017 COA 38, ¶ 21.

¶ 11 Whether ICWA's provisions were satisfied is a question of law that we review de novo. *L.L.*, ¶ 46.

### B. Timeliness of Dees's ICWA Motion

¶ 12 We first address the district court's reason for denial. The court noted that Dees's ICWA motion sought to reconsider a September 3, 2013, order. (In fact, the motion also sought reconsideration of the October 2013 APR order.) The court cited C.R.C.P. 121, section 1-15(11), which provides that motions to reconsider interlocutory orders shall be filed within fourteen days of the order unless the moving party shows good cause for not filing within that time. Finding that Dees had filed the ICWA motion

1382 days after the September 2013 order and had not shown good cause for the delay, the court denied the motion as untimely.

¶ 13 According to ICWA, however, an Indian child who is the subject of an action for foster care placement or termination of parental rights, *any parent or Indian custodian from whose custody such child was removed*, and the Indian child's tribe may petition a court of competent jurisdiction to invalidate such action upon a showing that the action violated ICWA provisions. 25 U.S.C. § 1914 (2018). ICWA places no time limit on such a petition. Moreover, barring a parent's ICWA claim as untimely or waived under state law would contradict our supreme court's recognition that ICWA is also intended to protect the tribe, which was not at fault for the timing of the ICWA claim and whose interest may have been harmed. *See B.H.*, 138 P.3d at 304 ("Because the protection of a separate tribal interest is at the core of the ICWA, otherwise sufficiently reliable information cannot be overcome by the statements, actions, or waiver of a parent, or disregarded as untimely.") (citations omitted); *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 49 (1989) ("Tribal jurisdiction under § 1911(a) was not meant to be defeated by the actions of

individual members of the tribe, for Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians."); *cf. People in Interest of D.B.*, 2017 COA 139, ¶ 8 (ICWA compliance claims may be raised for the first time on appeal).

¶ 14    Finally, as we will explain, the APR order here constituted a foster care placement. Therefore, the district court erred in denying Dees's ICWA motion as untimely. In addition, because the record does not show that the court complied with ICWA, we reverse the order denying the ICWA motion and remand for further proceedings as discussed below.

## C. Was the APR a Child Custody Proceeding?

¶ 15    Dees argues that the district court failed to comply with ICWA before issuing the October 2013 APR order. Stockwell responds that ICWA is inapplicable because he and Dees are parents of L.D-S. Stockwell is correct that ICWA does not apply to an award of custody to one of the parents, including in a divorce proceeding. 25 C.F.R. § 23.103(b)(3) (2018); *see also In re J.B.*, 100 Cal. Rptr. 3d 679, 682 (Cal. Ct. App. 2009) (a child custody proceeding does not

include a proceeding in which a child is removed from one parent and placed with the other because placement with a parent is not foster care). But whether Stockwell qualifies as a parent for purposes of ICWA requires a closer look.

¶ 16 As relevant here, a "parent" under ICWA is defined as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom." 25 U.S.C. § 1903(9). By defining this critical term, Congress has expressed its intention that the word is not subject to definition by state courts. *Cf. Holyfield*, 490 U.S. at 45 ("Under these circumstances it is most improbable that Congress would have intended to leave the scope of the statute's key jurisdictional provision subject to definition by state courts as a matter of state law.").

¶ 17 As noted, Stockwell is L.D-S.'s legal father. Based on this status, he enjoys all the rights and responsibilities of legal fatherhood under state law. *See N.A.H. v. S.L.S.*, 9 P.3d 354, 359 (Colo. 2000); *In re Parental Responsibilities Concerning A.D.*, 240 P.3d 488, 492 (Colo. App. 2010). But Stockwell is neither L.D-S.'s

biological parent nor an Indian person who has adopted the child. So, Stockwell is not a parent as defined by ICWA.

¶ 18 Because Stockwell is not L.D-S.'s parent under ICWA, we consider whether the APR to Stockwell was a "foster care placement," which is defined as

> any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated[.]

25 U.S.C. § 1903(1)(i). Unlike "parent," the terms "foster home," "institution," "guardian," or "conservator" are not defined by ICWA. We therefore look to state law and the well-accepted meanings of the terms. *See Holyfield*, 490 U.S. at 47.

¶ 19 A "guardian" has the duties and powers of a parent regarding a minor ward's support, care, education, health, and welfare. *See* §§ 15-14-207(1), -208(1), -314(1), C.R.S. 2018. Stockwell has primary parenting time with L.D-S., sole decision-making for the child's educational needs, and joint decision-making for other child-related issues. These responsibilities place Stockwell squarely within the role of L.D-S.'s "guardian"; hence, the APR to Stockwell

was a foster care placement under ICWA. *See K.G.*, ¶ 16 (recognizing that involuntary APR to aunt and uncle constituted placement with guardians).[1]

¶ 20 A foster care placement, which here takes the form of an APR to a person who is not a parent under ICWA, is a child custody proceeding under ICWA because the parent cannot have the child returned upon demand but must instead overcome procedural and substantive barriers to regain custody and control of the child. *See id.* at ¶¶ 14, 17-18; *see also* 25 C.F.R. § 23.2 ("*Upon demand* means that the parent or Indian custodian can regain custody simply upon verbal request, without any formalities or contingencies.").

¶ 21 In sum, the APR to Stockwell was a child custody proceeding for purposes of ICWA. The district court, however, did not inquire into whether L.D-S. was an Indian child. That was error requiring a remand for further proceedings. *See* 25 U.S.C. § 1914.

---

[1] Because we conclude that Stockwell is a guardian, we need not consider whether he qualifies as a "foster home," an "institution," or a "conservator."

## III. Remand Directions

¶ 22    On remand, the district court should procure the appearance, if possible, of Dees and Stockwell so that it may make inquiries on the record.  *See* 25 C.F.R. § 23.107.  If those inquiries reveal that the court knows or has reason to know that L.D-S. is an Indian child, the court must comply with ICWA's notice provisions.  *See* § 25 U.S.C. § 1912(a) (2018).

¶ 23    We recognize that a county department of human services or the petitioning party typically bears the burden to send notice to a tribe.  *See* 25 C.F.R. 23.111(a)(1) (2018); § 19-1-126(1)(b), C.R.S. 2018; *L.L.*, ¶¶ 24, 33-35.  But, because no department is involved here and both parties are pro se, the district court shall bear the burden to send any required notices.  *See People in Interest of I.B.-R.*, 2018 COA 75, ¶ 6 (federal regulations and guidelines implementing ICWA impose a duty of inquiry and notice on trial courts); *cf.* 25 C.F.R. § 23.111(a)(1) (court must ensure that proper notices are sent).

¶ 24    In particular, the court must notify any relevant tribe, by registered mail with return receipt, of the pending child custody proceeding and its right to intervene.  *L.L.*, ¶¶ 34-35.  The court

11

should provide sufficient information for the tribe to determine whether L.D-S. is a member or eligible for membership. *Id.* at ¶ 37. The notice must include:

> (1) The child's name, birthdate, and birthplace;
>
> (2) All names known (including maiden, married, and former names or aliases) of the parents, the parents' birthdates and birthplaces, and Tribal enrollment numbers if known;
>
> (3) If known, the names, birthdates, birthplaces, and Tribal enrollment information of other direct lineal ancestors of the child, such as grandparents; [and]
>
> (4) The name of each Indian Tribe in which the child is a member (or may be eligible for membership if a biological parent is a member)[.]

25 C.F.R. § 23.111(d); *L.L.*, ¶ 37.

¶ 25     The notice must also include a copy of the petition, complaint, or other document by which the child custody proceeding was initiated and, if a hearing has been scheduled, information on the date, time, and location of the hearing, and various statements related to the tribe's right to intervene and petition for a transfer. 25 C.F.R. § 23.111(d)(5)-(6); *L.L.*, ¶ 38.  The court must afford the tribe a reasonable amount of time to respond to notices sent.  *See*

25 U.S.C. § 1912(a).  Section 1912(a) provides that no foster care placement hearing shall be held until at least ten days after the tribe's receipt of notice.  This section further provides that a tribe shall be granted an additional twenty days to prepare for such proceeding if the tribe so requests.  *Id.*

¶ 26 After receiving responses from the tribe, or after the expiration of the time permitted for response by section 1912(a) or a reasonable additional time as permitted by the court, the court shall enter factual findings and legal conclusions regarding the application of ICWA.  If the court determines that L.D-S. is an Indian child, then the court must vacate the October 2013 APR order (and its later modifications) and proceed in accordance with ICWA.  *See L.L.*, ¶ 56.

¶ 27 But if neither party claims that he or she is affiliated with a tribe, that L.D-S. is an Indian child, or that he or she has discovered information indicating that L.D-S. is an Indian child, the court may find on the record that it has no reason to know that L.D-S. is an Indian child.  Or, if, after notices to tribes are sent, no tribe determines that L.D-S. is a member or that L.D-S. is eligible for membership and Dees is a member, the court may find on the

record that L.D-S. is not an Indian child. In either scenario, the October 2013 APR order (and its modifications) shall stand, subject to the parties' right to appeal the court's ICWA findings. *See id.*

### IV. Conclusion

¶ 28　We reverse the order denying Dees's ICWA motion and remand for the district court to comply with ICWA's provisions as discussed herein.

¶ 29　The current parenting time order will remain in place pending the district court's compliance with this opinion and ICWA.

JUDGE RICHMAN and JUDGE WELLING concur.