25CA1075 Peo in Interest of AOL 12-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1075
City and County of Denver Juvenile Court No. 22JV30718
Honorable Lisa M. Gomez, Judge

The People of the State of Colorado,

Appellee,

In the Interest of A.O.L., a Child,

and Concerning D.A.W.B.,

Appellant,

and

A.R.L.,

Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee the People of the State of Colorado

Josi McCauley, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellee A.R.L.

¶ 1    In this dependency and neglect action, D.A.W.B. (father) appeals the allocation of parental responsibilities (APR) for A.O.L. (the child) to A.R.L. (mother).[1]  We affirm the judgment.

## I.    Background

¶ 2    Denver Human Services (the Department) filed a petition in dependency and neglect, raising concerns about mother's mental health and both parents' failure to follow safety plans.  Father is an enrolled member of the Lower Brule Sioux Tribe, and the child is eligible for enrollment.  Accordingly, this case is governed by the Indian Child Welfare Act (ICWA), and the matter was transferred to the Denver County Juvenile Court's ICWA docket after the shelter hearing.

¶ 3    The juvenile court adjudicated the child dependent and neglected, after mother entered an admission and father had a jury trial.  The court then adopted treatment plans for both parents.

---

[1] Both parents identify as nonbinary and generally asked the juvenile court to use gender-neutral pronouns for them.  D.A.W.B. referred to themself as "father" in pleadings, testified that the child knew them as "daddy," and identified as the child's father for the parentage determinations.  A.R.L. identified as the child's mother for the parentage determinations.  Accordingly, we adopt their use of "father" and "mother" to distinguish the parents in this opinion.

Father appealed the adjudication, and a division of this court affirmed the judgment. *See People In Interest of A.O.L.*, (Colo. App. No. 23CA1360, Feb. 22, 2024) (not published pursuant to C.A.R. 35(e)).

¶ 4     Meanwhile, the juvenile court returned custody of the child to mother four months after the petition was filed. However, the child was moved in and out of mother's care due to concerns about mother's mental health and domestic violence between the parents. The court returned custody of the child to mother for the last time five months before the APR hearing.

¶ 5     Two and a half years after the petition was filed, the juvenile court granted mother's motion for an APR.

## II.     Fitness

¶ 6     Father contends that the juvenile court "erred by issuing an APR awarding custody and decision-making to [mother] without first requiring the Department to demonstrate that [mother] was, indeed, a fit parent." But father does not explain, and we cannot discern, why the Department would have such a duty when mother — and not the Department — moved the court for an APR.

¶ 7    The juvenile court was not required to make parental fitness findings when it determined that mother's proposed APR served the child's best interests.  *See* § 19-3-507(1)(a).  Nevertheless, the court found that placement with mother was "well-founded, supported by the evidence and in the best interests of the minor child . . . and in the public interest."  Although the court acknowledged "concerns around risk," it determined that the underlying safety issues regarding mother no longer persisted.  As a result, the court found it appropriate to close the case with an APR to mother.

¶ 8    The record supports these findings.  The caseworker — qualified as an expert in social casework with an emphasis in child protection — opined that mother was a fit parent at the time of the APR hearing.  Father did not present any evidence to refute the caseworker's testimony that mother had successfully completed all objectives in the treatment plan.  The caseworker also noted that the child had been placed with mother "for five, almost six months," during which time mother was "very consistent in meeting [the child's] needs."  The caseworker opined that the child's return home to mother had been successful.  The caseworker testified that the Department approved the safety plan mother created to address

risks after the Department's involvement ended, and that any lingering concerns were not significant.

### III.    Active Efforts

¶ 9    Next, father claims that the Department failed to make active efforts to reunify him with the child, as required by ICWA.

¶ 10    Whether ICWA applies to a dependency and neglect case is a question of law that we review de novo.  *People in Interest of O.S-H.*, 2021 COA 130, ¶ 15.

¶ 11    ICWA establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture."  25 U.S.C. § 1902.  In other words, ICWA establishes minimum federal standards for an "Indian child" involved in a "child custody proceeding."  25 U.S.C. § 1903(1), (4); *People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 2.

¶ 12    But ICWA does not apply when the court awards custody of a child to a parent.  *See* 25 U.S.C. § 1903(1); 25 C.F.R. § 23.103(b)(3) (2025) (ICWA does not apply to "[a]n award of custody of the Indian child to one of the parents including, but not limited to, an award in a divorce proceeding."); § 19-1.2-103(2)(a)(VI), C.R.S. 2025 (defining

"[c]hild custody proceeding" as including an "allocation of parental responsibilities to a nonparent").

¶ 13    The child remained in mother's custody for at least five consecutive months prior to the issuance of the APR order.  And no party disputes that the court awarded the APR to mother — the child's biological parent.  *See* 25 U.S.C. § 1903(9) (defining a "parent" as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child").  Therefore, the APR proceeding was not a child custody proceeding that required the juvenile court to consider whether active efforts were made to prevent the breakup of the Indian family.  *See* 25 U.S.C. § 1903(1); 25 C.F.R. § 23.103(b)(3); *In re Marriage of Stockwell*, 2019 COA 96, ¶ 15 ("ICWA does not apply to an award of custody to one of the parents . . . .").

¶ 14    Accordingly, we conclude the juvenile court did not err by omitting active efforts findings from the APR judgment.

¶ 15    Father appears to acknowledge that such findings were not required as part of the APR judgment but nevertheless contends that the Department was required to comply with ICWA for the times when the child was not in either parent's custody.  While this

is undoubtedly true, our review is confined to the APR judgment. We therefore cannot review the juvenile court's active efforts findings during those limited periods when the child was in out-of-home placement and not with mother. *See In re Marriage of Roosa,* 89 P.3d 524, 529 (Colo. App. 2004) (we will not engage in a "[p]iecemeal review of orders and judgments that do not fully resolve an issue or claim"); *see also* C.A.R. 1(a) (explaining that our jurisdiction is limited to a review of final, appealable judgments or orders).

## IV.  Disposition

¶ 16    The judgment allocating parental responsibilities to mother is affirmed.

JUDGE FREYRE and JUDGE PAWAR concur.